# Kolb's Case.

The associate judges of the court of common pleas have not jurisdiction to hear and determine a motion for a new trial in a case where the president judge, before his appointment, was concerned as counsel : but such case must be certified to the nearest president judge, in pursuance of the acts of assembly providing for the holding of special courts.

Cases of divorce are within the meaning of the acts of assembly authorizing the holding of special courts.

*Quære.* Whether a *mandamus* may be issued by the supreme court to the court of common pleas.

THIS was an application by Mr Fisher, on behalf of John Kolb, for a *mandamus* to the judges of the court of common pleas for *York* county, under the circumstances which are stated in the opinion of the Court, delivered by

KENNEDY, J.—A writ of *mandamus* to the judges of the court of common pleas of York county, has been moved for in this case. The proceedings which have given rise to this motion, were commenced in that court by John Kolb the husband, against Mary Kolb his wife, for the purpose of obtaining a divorce from the bonds of matrimony. The causes assigned by him in his libel were: first, that his wife had committed adultery ; second, that she had wilfully and maliciously deserted and absented herself from his habitation, without a reasonable cause, during the space of two years and upwards. The wife, upon being served with a subpœna requiring her to appear and show cause why the divorce should not be decreed, came into court, and after denying the charges contained in the libel against her, alleged that the libellant had committed adultery, and requested of the court that an issue might be formed, for the purpose of having the facts involved in the charges made on both sides decided by a jury. The court accordingly directed the issue to be formed, which was done. It was tried before Judge Franklin, then president of the court of common pleas of York county, and the associate judges thereof;

[Kolb's Case.]

whereon the jury returned a verdict acquitting both parties of the adultery charged, but found the respondent guilty of the desertion charged against her. The respondent moved to set the verdict aside, and to have a new trial granted; upon which the court granted a rule to show cause why it should not be so. Pending this rule, York county, under an act of assembly previously passed for that purpose, fell into a new judicial district, for which judge Durkee was appointed the president. He, however, having been counsel for one of the parties before his appointment, therefore declined sitting as a member of the court to hear and decide on the rule for a new trial, and gave notice to this effect to the prothonotary.

In regard to the sufficiency of the reason given by judge Durkee for declining to sit as a member or president of the court, to hear and decide on the rule to show cause why a new trial should not be granted, there can be no doubt. Indeed, it is admitted that his conduct was perfectly correct, as no consent was given by the parties that he should sit and take part in the decision of the rule.

Next, as to the conduct of the associate judges. They, when asked to proceed and decide on the rule, resolved that they had no authority to do so. Now it must be observed and borne in mind, that it has not been shown that any agreement in writing was made and filed of record by the parties, as required by the act, that the associate judges should, without the aid of a president judge, hear and decide on the rule. And such agreement not being made and filed, I think that they came to a correct conclusion in deciding that they had no jurisdiction over the cause.

A question, however, has been made, whether the case as it now stands in the court, under the rule to show cause why a new trial should not be granted, comes within the provisions contained in the act of the 14th of April 1834, which authorises the president of another district, residing nearest to the place where the cause is pending and to be tried, with one or more of the associate judges of the proper county, to hold a special court for the trial of it; and if it does not, it is concluded that the associate judges ought of necessity to have heard and decided on the rule; otherwise the party is without a remedy. If it be that this act does not embrace this case, it would certainly be a powerful argument to show that the associate judges ought to have heard and decided it. But I am fully satisfied that the act does, in express terms, embrace this case, and that under the authority thereof a special court must be organized for the purpose of deciding it, unless the parties by agreement in writing, filed of record, will dispense with it. The words of the act of 1834 are, " whenever the president judge of any of the said courts shall have been concerned as counsel for either of the parties in any *suit depending* in any county of his *district*, &c." Now the proceedings here were commenced by the husband's presenting his petition, usually called a libel, to the court, against his wife, praying to be divorced from the bonds of matrimony, for the causes therein set

[Kolb's Case.]

forth. Upon which a subpœna was awarded in due form and served upon the wife. This proceeding was undoubtedly the commencement of a *suit* by the husband against his wife, and is expressly denominated such in the seventh section of the act of 1815, concerning divorces; in which, at the beginning thereof, the legislature, in speaking of the like proceeding, says, "in any action or *suit* commenced in the said court for a divorce for the cause of adultery, &c." The issue which was formed in this case and directed by the court to be tried, was done in pursuance of an express direction to that effect, contained in the act of 1815, when requested by either party, and must be considered as subsidiary merely to the trial and final determination of the action for divorce. But until the verdict given by the jury on the issue was approved by the court, it could not properly be considered as even a final determination of the facts, and much less of the law connected with and involved in it. · In deciding on the rule to show cause why the verdict should not be set aside and a new trial granted, it can readily be imagined that questions of law, not only of great intricacy, but of the first importance to the parties, may arise, which the associate judges, being unlearned in the law, would be very incompetent to settle correctly; and hence the aid that is to be derived from the law-learning of a president judge becomes indispensably necessary. This was the only thing that the legislature had in view, and all that they intended to provide for by the passage of the act authorising the holding of a special court. An action or *suit depending* in court, is not ended by a verdict of a jury being given and recorded in it. For the court, for divers reasons, when shown to exist, would be bound, according to every principle of both law and justice, to set it aside and to grant a new trial. Until, then, a judgment shall be rendered on the verdict, or it shall be approved of by the court in some way, the action must be considered as still "depending;" and being so, brings it within the very words of the acts providing for the holding of a special court. Here let me observe, in answer to a suggestion made by counsel, that the act of assembly only seemed to provide for holding special courts in those cases where the intervention of a jury was necessary to try and determine them. But as the province of the jury is only to decide on the facts, and not the law of the case, it is obvious that in every case where the parties agree as to the facts of it, a jury is unnecessary, and that the action must be tried and decided by the court alone: so that if it were possible to distinguish between the necessity that there is to have a special court to decide a cause which turns entirely upon a question of law, and one which involves both matters of law and fact, and consequently requiring a jury to decide on the matters of fact; it would rather seem to be in favour of having a special court, when the law only of the case is disputed. But it appears to me that there is no ground for such distinction, either in the language of the act or the reason of the thing itself.

[Kolb's Case.]

It is true, that by the proviso contained in the close of the first section of the act of 1818, the associate judges have power given to them, in all cases to be tried by a special court, at the regular terms of the courts in which the actions respectively have been commenced, to make all necessary rules and orders, preparatory to the trial of such causes. But the very circumstance of this power being thus specially delegated to them, rather tended to show that the legislature did not intend that they should exercise any authority whatever beyond this. And surely it cannot be pretended that the power of discharging or making absolute a rule previously granted to show cause why a verdict given by a jury in a cause proper to be tried in a special court, should not be set aside and a new trial granted, is embraced within the power to make rules and orders merely preparatory to the trial of the cause; which never involve questions of law requiring the exertion of legal acquirements to decide in respect to them. But this provision is omitted in the act of 1834. And further it may be observed, that even if the verdict given by the jury in this case were approved of by the court, the action for divorce must still be considered as depending and untried, until the court shall make a final decree in it; but this cannot be done without deciding as to the law of the case, which requires the aid of a president judge. And hence the case is brought within the clear letter, spirit and meaning of the act of assembly, on the subject of a special court. The prothonotary ought therefore to be requested by the party wishing it, to transmit to the nearest president of some other district, a list of this and other causes at issue on his docket, requiring a special court to try them, and no doubt such president will appoint a special court for the purpose of disposing of them finally.

Without, then, intending to express any opinion, whether we have the power or not to grant a *mandamus* to a court of common pleas, in any case, for any cause whatever, the motion for it is denied in this case.