379 A.2d 1346

**Edward Harry BOLE**

v.

**NATIONWIDE INSURANCE COMPANY, Appellant.**

Supreme Court of Pennsylvania.

Argued March 8, 1977.

Decided Dec. 1, 1977.

Charles J. Duffy, Jr., Lancaster, Mentzer, Coyne & Duffy, Pittsburgh, for appellant.

Louis Kwall, Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION OF THE COURT

O'BRIEN, Justice.

On July 1, 1970, appellee, Edward Harry Bole, was a passenger in an automobile owned and operated by George Kocsis. Appellee was seriously injured when the Kocsis auto struck two parked cars. Another passenger was killed in the accident.

At the time of the accident, Kocsis carried a $25,000 single limit liability policy with Liberty Mutual Insurance Company. By way of settlement, appellee recovered $11,876 from

Kocsis' liability carrier.[1] Appellee then submitted a claim to *his* insurance company, appellant, Nationwide Insurance Company, pursuant to a $10,000 uninsured motorist provision contained in the policy.

Nationwide refused payment. In June of 1972, appellee requested that the claim be submitted to arbitration. The insurance policy provided for common law arbitration, with each party choosing a "*competent and disinterested arbitrator.*" These two arbitrators would then select a third arbitrator.

Both Nationwide and Bole selected an arbitrator. Bole objected to Nationwide's choice, Karl Brueck, Jr., Esquire, because Mr. Brueck had provided legal representation for Nationwide in the past. Mr. Brueck, however, refused to disqualify himself. The third arbitrator was agreed upon. At the hearing, Bole again objected to Mr. Brueck, who again refused to disqualify himself. Following the hearing, an award was given against Bole in favor of Nationwide. The arbitrator chosen by Bole dissented from the award.

Appellee filed a petition and rule to vacate the award of arbitrators in the Court of Common Pleas of Allegheny County, again claiming, *inter alia,* that Mr. Brueck should have disqualified himself. The court, however, denied appellee's petition and confirmed the arbitrators' award.

An appeal was taken to the Superior Court, which decided the case in December of 1975. *Bole v. Nationwide Insurance,* 238 Pa.Super. 138, 352 A.2d 472 (1975). A majority of that court ordered a remand, but the court was divided on the scope of the remand. Judge Spaeth, in an opinion joined by Judges Hoffman and Cercone, expressed a belief that the matter should be remanded for an evidentiary hearing to determine if Mr. Brueck's past representation of Nationwide evidenced an actual bias. Judge Van der Voort, in an

1. Appellee's hospital bill alone was approximately $15,000. Because of brain damage and the loss of an eye, appellee has been unable to return to work.

opinion joined by President Judge Watkins, indicated the award should be vacated and the case remanded for appointment of new arbitrators, because they felt prior representation of a party by an arbitrator should require disqualification of that arbitrator upon objection by the opposing party, with no showing of actual bias required. Judge Price filed a dissenting opinion, joined by Judge Jacobs, in which he expressed the view that partisan appointments were permissible and that the award should be confirmed. In March of 1976, we granted appellant's petition for allowance of appeal.

We must first determine what effect prior representation by an arbitrator under this contract of insurance has on the capacity of that arbitrator to serve.

We are of the opinion that the *per se* rule espoused by Judge Van der Voort in his opinion is correct. We thus vacate the award of the arbitrators and remand the case for the selection and appointment of a new panel of arbitrators.

The instant dispute involves common law arbitration with its limited scope of judicial review. As we stated in *Allstate Ins. Co. v. Fioravanti,* 451 Pa. 108, 114, 299 A.2d 585, 588 (1973),

> ". . . [A]ppellant, to succeed, must show by clear, precise and indubitable evidence that he was denied a hearing, or that there was fraud, misconduct, corruption or some other irregularity of this nature on the part of the arbitrator which caused him to render an unjust, inequitable, or unconscionable award, the arbitrator being the final judge of both law and fact, his award not being subject to disturbance for a mistake of either."

As a common law arbitration award cannot be reversed for either a mistake of law or fact, we believe it best to avoid even a hint of impropriety when a contract calls for a "disinterested" arbitrator.

As Judge Van der Voort stated in his opinion:

"Because they are the final decisionmakers on the law and facts of the case, whose decision is final absent fraud or misconduct, arbitrators under common law stand as judges. Their function is judicial, and their conduct must be robed in judicial impartiality. . . ."[2]

In *Kolb's Case*, 4 Watts 154 (1835), we held that a judge should disqualify himself when he has served as counsel for one of the parties, and we believe that principle is equally applicable today.

While not controlling in the instant case, § 18 of the Rules of the American Arbitration Association is helpful. It states:

"Disclosure by Arbitrator of Disqualification—At the time of receiving his notice of appointment, the prospective arbitrator is requested to disclose any circumstances likely to create a presumption of bias or which he believes might disqualify him as an impartial arbitrator. Upon receipt of such information, the Tribunal Clerk shall immediately disclose it to the parties, who if willing to proceed under the circumstances disclosed, shall in writing, so advise the Tribunal. If either party declines to waive the presumptive disqualification, the vacancy thus created shall be filled in accordance with applicable provisions of this Rule."

See also *Commonwealth Corp. v. Casualty Co.,* 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968).

For the reasons stated, we hold that when a contract calls for "disinterested" arbitrators, prior representation of one of the parties by a designated arbitrator will disqualify that arbitrator upon objection of the opposing party.[3]

2. In light of the contract provision calling for disinterested arbitrators, we agree with Judge Van der Voort's statement. If a contract calling for commonlaw arbitration allowed the selection of partisan arbitrators, the above-quoted statement would not then be applicable.

3. This opinion in no way is meant to attack the personal or professional integrity of Mr. Brueck, a past president of the Allegheny County Bar Association.

Nationwide claims that the award of the arbitrators should be confirmed because the limited scope of review requires such a result. We do not agree. As previously mentioned, a common law arbitration award can be vacated if a party is denied a hearing. See *Fioravanti, supra.* In *Smaligo v. Fireman's F. Ins. Co.,* 432 Pa. 133, 247 A.2d 577 (1968), we held that a party is entitled to a "full and fair" hearing. Appellee's position is that arbitrator Brueck's refusal to disqualify himself because of past representation of Nationwide amounted to denial of a fair hearing. As we believe Mr. Brueck should have disqualified himself in light of the contract calling for disinterested arbitrators, failure to do so under these circumstances is a denial of a fair hearing.

Nationwide next argues that Bole, by proceeding with the hearing, has waived any argument concerning Mr. Brueck's past representation. We do not agree. Appellant, in effect, argues that appellee should have attempted to enjoin the arbitration. In *Lincoln Sys. of Ed. v. Lincoln Ass'n of Univ. Profs.,* 467 Pa. 112, 119, 354 A.2d 576, 580 (1976), we stated:

> "Whenever one party to an agreement seeks to enjoin the other from proceeding to arbitration, judicial inquiry is limited to two questions: (1) was an agreement to arbitrate entered into; and (2) does the dispute involved fall within the arbitration clause. . . ."

In the instant case, appellee would not have been able to enjoin the proceedings as an agreement to arbitrate was clearly entered into and the instant dispute was within the arbitration clause.

Order of the Superior Court is vacated and case remanded to the Court of Common Pleas of Allegheny County for proceedings consistent with this opinion.

ROBERTS, J., files a Dissenting Opinion in which NIX, J., joins.

ROBERTS, Justice, dissenting.

The majority announces a rule prohibiting a party who has agreed to submit disputes to "competent and disinterested" arbitrators from choosing as that party's arbitrator any attorney who has previously performed legal services for that party. This rule departs from the important doctrine limiting judicial intrusion into the arbitration process, thus imposing an unnecessary and unwise burden on the judicial system. I dissent.

Arbitration, designed to allow parties to submit their disputes to a non-judicial tribunal, is favored because it "provide[s] an expeditious and inexpensive method of resolving disputes with the further winning attribute of helping to ease congested court calendars." *Allstate Insurance Co. v. Fioravanti,* 451 Pa. 108, 116, 299 A.2d 585, 589 (1973). Accord, *Flightways Corp. v. Keystone Helicopter Corp.,* 459 Pa. 660, 331 A.2d 184 (1975); *Mendelson v. Shrager,* 432 Pa. 383, 248 A.2d 234 (1968).

To preserve the utility of arbitration as a meaningful substitute for court litigation, judicial review of arbitration proceedings is circumscribed. *Allstate Insurance Co. v. Fioravanti,* supra. A party challenging an award

> "must show by clear, precise, and undubitable evidence that he was denied a hearing, or that there was fraud, misconduct, corruption, or some other irregularity of this nature on the part of the arbitrator which caused him to render an unjust, inequitable, or unconscionable award, the arbitrator being the final judge of both law and fact, his award not being subject to disturbance for a mistake of either."

Id. 451 Pa. at 114, 299 A.2d at 588.

The majority intervenes in this arbitration proceeding. It does so not in the face of "clear, precise, and undubitable evidence" of fraud or other irregularities committed by appellant's arbitrator, but rather on the theory that the arbitrator's prior representation of appellant renders the

arbitrator conclusively incapable of fulfilling the "disinterested" arbitrator requirement set forth in the arbitration clause of the agreement.

In reaching its conclusion, the majority interprets the agreement of the parties, and thus itself assumes the role of arbitrator. The meaning of "disinterested," like any other provision of the arbitration clause, is a question which should be left to the arbitrators. The majority invites parties to arbitration to submit to courts their agreements to arbitrate for judicial refinement of the phrase "disinterested;" moreover, the majority also invites parties to seek judicial interpretation of "competent," "qualified," and other provisions of a typical arbitration agreement. The majority undermines arbitration when it usurps the arbitrator's function and encourages court litigation over interpretation of arbitration agreements.

Even more objectionable is the majority's conclusion that appellee has been denied a fair hearing. This agreement, like many others, provides that each party shall name one arbitrator, and that the two named arbitrators shall select a third. It is not unreasonable to expect a party to choose an individual with whom he is familiar and whose expertise, reliability, and sense of judgment he trusts.

The majority unjustifiably eliminates from the list of possible arbitrators any attorney who has previously represented a party even though that attorney might possess the attributes that render him desirable as an arbitrator. The opportunity to select such an individual contributes to the attractiveness of arbitration and should be encouraged.

The majority's restrictive rule will work an even greater hardship if applied not to a party such as appellant, an insurance carrier, but to appellee, an individual of presumably lesser resources. The rule permits not only an individual such as appellee to challenge, based on provisions of the agreement, the "disinterestedness," "competency," and other qualifications of the insurance carrier's arbitrator, but also

195 of the agreement, on the qualifications

allows the carrier, in turn, to mount the same attacks, based on the same provisions of the agreement, on the qualifications of the individual's arbitrator. Denied the right to appoint as arbitrator an attorney with whom that party is familiar, that party would have to seek out another individual about whom that party may know nothing. Because parties such as insurance companies can much more easily find suitable representatives, individual parties are put at a disadvantage in selecting an arbitrator. Permitting such unwarranted attacks on qualifications invites unnecessary increase in the judicial burden.

Unlike here, if the party chooses an attorney currently retained by the party, a different conclusion might be reached. In those circumstances, the court might disqualify the attorney in the present employment of the party, not on the basis of any provision of the arbitration agreement, but because the selection may conflict with common law standards of fairness in arbitration. The potential for gain to the currently retained attorney may give rise to an inference that the attorney so employed might be incapable of rendering a fair judgment.

Absent fraud or other grounds for disqualification at common law, this Court should refrain from interfering with the arbitration process. To so interfere—as the majority does here—is to impose an unnecessary and unwise additional burden on an already overburdened judicial system.

I would affirm the award of the arbitrators.

NIX, J., joins in this dissenting opinion.