383 A.2d 189

**Joseph RUNEWICZ and Nellie Runewicz, his wife, Appellants,**

**v.**

**KEYSTONE INSURANCE COMPANY.**

Supreme Court of Pennsylvania.

Argued Jan. 20, 1977.

Decided Jan. 26, 1978.

458

Joseph D. Shein, Philadelphia, for appellants.

W. H. Livingston, Philadelphia, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION OF THE COURT

O'BRIEN, Justice.

Appellant Nellie Runewicz was injured while operating an automobile insured by appellee, Keystone Insurance Company (Keystone). The accident occurred when an automobile operated by Berretta Christman crossed the road and collid-

ed with the Runewicz vehicle. Appellants, Nellie Runewicz and her husband, Joseph Runewicz, sued Christman in the Court of Common Pleas of Bucks County, where the accident occurred. Before trial it was revealed that Christman was insured for $25,000 by Insurance Company of North America. Christman's insurer offered to settle for the policy limit. Appellants notified Keystone of the offer and then accepted it, as Christman did not have assets from which a greater judgment could be satisfied.

Appellants considered the settlement insufficient to compensate for the injuries and filed a claim with Keystone under their policy's uninsured motorist coverage. The policy stated that it would cover damages for which the owner or operator of an uninsured automobile was responsible. It was to be applicable to:

". . . an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder."

The uninsured motorist provision also contained a trust agreement applicable in case of any payment thereunder. The agreement provided in relevant part that:

"(a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made;

"(b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization because of

460

the damages which are the subject of claim made under this Part. . . ."

Keystone refused to pay the claim, maintaining that Nellie Runewicz had not been involved in an accident with an uninsured motorist in view of the above language in the policy.

The matter was submitted to arbitration under a clause in the policy giving either party the right to demand arbitration in case of a disagreement as to whether the insured was entitled to recover, or, if so, how much. The arbitration hearing was held in Philadelphia, where appellants' residence and Keystone's home office were located. Appellants were awarded $10,000 under the uninsured motorist provision of their insurance contract. The Court of Common Pleas of Philadelphia entered a judgment confirming the arbitration award. The Superior Court reversed per curiam. We granted an appeal to determine whether the Superior Court went beyond the applicable scope of appellate review.

I  *SCOPE OF REVIEW*

To determine the proper scope of review, we must first determine whether the arbitration was at commonlaw or under the Pennsylvania Arbitration Act of 1927, P.L. 381, 5 P.S. § 161, et seq. This court established early that the Arbitration Act, rather than becoming the exclusive method of arbitration in Pennsylvania, left commonlaw arbitration intact. *Sukonik v. Shapiro*, 333 Pa. 289, 5 A.2d 108 (1939). The Arbitration Act does not apply unless it is expressly or impliedly provided for by the parties and its procedures are followed. *Harwitz v. Selas Corp. of America*, 406 Pa. 539, 178 A.2d 617 (1962). In the instant case, neither the arbitration agreement in the policy nor any subsequent mutual agreement by the parties provided either expressly or impliedly for arbitration under the act. This court finds that the failure to specifically provide for the application of the Arbitration Act means that the arbitration was at commonlaw. In *Keller v. Local 249 I. B. of T., C., W. & H.*, 423 Pa. 353, 223 A.2d 724 (1966), we quoted the following language

from *J. A. Robbins Co., Inc. v. Airportels, Inc.*, 418 Pa. 257, 210 A.2d 896 (1965):

"[When] the agreement to arbitrate does not itself determine whether the Act of 1927 or common law rules are controlling . . . and *[when] there is no evidence that both the parties subsequently agreed, either expressly or by implication, to apply the Act, common law rules must control the enforcement of the award.*" (Emphasis added.)

Furthermore, the agreement involved here provided that arbitration would be under the rules of the American Arbitration Association and that the parties would be bound by the result. The inclusion of these provisions constitutes failure to follow the procedures of the Arbitration Act and are, therefore, inconsistent with it so as to be sufficient in itself to make the arbitration at commonlaw, *Wingate Const. Co. v. Schweizer Dipple, Inc.*, 419 Pa. 74, 213 A.2d 275 (1965).

## II  *MERITS*

■■■■  A commonlaw arbitration award is not reviewable on the basis of error of law or fact by the arbitrators. The setting aside of an award is proper only on a showing of denial of a hearing or fraud, misconduct, corruption, or similar irregularity leading to an unjust, inequitable, or unconscionable award. *Harwitz v. Selas Corp. of America, supra.* Keystone admits the above principle to be applicable here, but claims that the award was contrary to the language of the policy so as to constitute such "other irregularity" as would justify its being vacated. Keystone points to *Allstate Ins. Co. v. Fioravanti*, 451 Pa. 108, 299 A.2d 585 (1973) to support this premise. In that case, the insured's granddaughter was struck by an uninsured motorist. The insurer refused to pay, claiming that she was not a member of the insured's household so as to be covered. In affirming the arbitration award, which required payment under the uninsured motorist provision, we mentioned that a hearing must be "full and fair" to meet the commonlaw procedural standard.

Keystone points to our statement in *Fioravanti* that we could hypothesize a situation where an arbitration award could be vacated because of bad faith, ignorance of law, or indifference to justice. It claims that such a situation exists in the instant case. In *Fioravanti* we elaborated on our hypothesis by citing *Smaligo v. Fireman's F. Ins. Co.*, 432 Pa. 133, 247 A.2d 577 (1968). In *Smaligo*, the insured's daughter was killed by a hit-and-run driver. The arbitrators awarded only $243 in damages after refusing to allow the decedent's attending physician to testify as to her future work expectancy. We found such refusal to constitute denial of a full and fair hearing because its effect was to completely exclude evidence on a crucial point. We distinguished *Fioravanti* from *Smaligo* because no factual evidence or argument was excluded there. The insurer's counsel expressed the points contained in the memorandum in his opening and closing arguments and his cross-examination of the opposing witnesses. The argument was not excluded. The arbitrators merely declined to have it repeated in another form. Every opportunity was given to present evidence and cross-examine witnesses. That was sufficient for a fair hearing. In this case, Keystone does not contend that it was not permitted to present its case to the arbitrators as it saw fit. The award is not objectionable on the basis of *Smaligo* and *Fioravanti*.

Keystone next disputes the award because it claims that it is contrary to the contract. That is of no consequence, an arbitration award is conclusive even if it has the effect of varying the terms of the contract. *Freeman v. Ajax Foundry Prod., Inc.*, 398 Pa. 457, 159 A.2d 708 (1960). The broad power of the arbitrators has been repeatedly recognized in uninsured motorist cases. Their decision is final as to whether conditions precedent for coverage have been complied with, *Harleysville Mut. Ins. Co. v. Medycki*, 431 Pa. 67, 244 A.2d 655 (1968); whether a claim is barred by the Statute of Limitations, *Merchants M. I. Co. v. Am. Arb. Assn.*, 433 Pa. 250, 248 A.2d 842 (1969); whether an injured party is included among those covered under the policy,

*Allstate Ins. Co. v. Taylor*, 434 Pa. 21, 252 A.2d 618 (1969), (where the injured son of the insured was twenty-five years old, in attendance at an out-of-state graduate school, and partly self-supporting) and *Preferred Risk M. Ins. Co. v. Martin*, 436 Pa. 374, 260 A.2d 804 (1970), (involving injuries to a foster child of the insured); and whether a motorist is in fact uninsured, as is the question here, *Grange M. Cas. Co. v. Mfgrs' Assn. I. Co.*, 438 Pa. 95, 263 A.2d 732 (1970).

*Nationwide M. Ins. Co. v. Barbera*, 443 Pa. 93, 277 A.2d 821 (1971), is similar to the instant case. There, the insured was involved in an accident caused by an uninsured motorist who hit his car head-on after crossing over from his side of the road. Two other vehicles became involved. The insured settled with their drivers and was then given an arbitration award under his own uninsured motorist coverage. The award was upheld despite the insurer's objection that it was barred by a trust agreement similar to that involved in the instant case.

In *Levin v. Nationwide Ins. Co.*, 231 Pa.Super. 244, 331 A.2d 699 (1974), the insured was injured when a cab she was riding in collided with a car driven by an uninsured motorist. She recovered from the cab company. An arbitration award allowing her a further recovery under her own policy was confirmed over a similar objection of variance from the contract.

This is not our first case involving a common law arbitration award that was claimed to be blatantly at odds with the contract involved. Such variance, without more, cannot be a basis for a finding of such misconduct as would justify setting the award aside. There may have been an error of fact or law here. We do not decide whether there was since that is irrelevant. Such factual or legal error as may have occurred here cannot be a basis for setting aside the commonlaw award. It must stand.

The order of the Superior Court is reversed and the order of the trial court confirming the arbitration is reinstated.

ROBERTS, J., joins in this Opinion and also files a Concurring Opinion.

POMEROY, J., files a Dissenting Opinion in which EAGEN, C. J., joins.

JONES, former C. J., took no part in the consideration or decision of this case.

ROBERTS, Justice, concurring.

I join the Opinion of the Court. I wish to add only that I cannot comprehend how the Court can sustain the award of the arbitrator here, and yet refuse to have done so in *County of Allegheny v. Allegheny County Prison Employees Independent Union*, 476 Pa. 27, 381 A.2d 849 (1977). We should be encouraging arbitration by respecting arbitration awards, rather than engaging in the unnecessary and unwise review of the entire arbitration process. Arbitration is too valuable a friend of the Court to be treated so lightly. See *County of Allegheny v. Allegheny County Prison Employees Independent Union*, supra (Roberts, J., dissenting); *Bole v. Nationwide Insurance Co.*, 475 Pa. 187, 193, 379 A.2d 1346, 1349 (1977) (Roberts, J., joined by Nix, J., dissenting). As Mr. Chief Justice Burger has stated:

> "The notion that most people want black-robed judges, well-dressed lawyers, and fine paneled courtrooms as the setting to resolve their disputes is not correct. People with problems, like people with pains, want relief, and they want it as quickly and inexpensively as possible."

Warren Burger, "Our Vicious Legal Spiral," 16 Judges' Journal 23, 49 (Fall, 1977).

POMEROY, Justice, dissenting.

The Court's approval of the award in this case allows the claimant to recover from her own insurance carrier under a standard uninsured motorist provision because payment of the maximum sum under the responsible party's policy does not satisfy her claim in full. Unlike the Court, I cannot sanction this drastic rewriting of the policy because it has been done by arbitrators. Hence this dissent.

Part IV of the insurance policy in issue in this case contains the uninsured motorist coverage. By the terms of this part of the policy, the insurer promises to pay the insured for all bodily injury caused by an "uninsured automobile." "Uninsured automobile" is a defined term. In pertinent part, the definition is an automobile "with respect to which the ownership, maintenance or use of which there is . . . *no insurance policy applicable* at the time of the accident . . ." (my emphasis). Disputed claims under this part of the policy are to be resolved by arbitration.

Our scope of review in common law arbitration cases is, as the majority notes, quite narrow. To upset an arbitrator's award, it must be shown "that there was fraud, misconduct, corruption or some other irregularity on the part of the arbitrator which caused him to render an unjust, inequitable or unconscionable award, the arbitrator being the final judge of both law and fact, his award not being subject to disturbance for a mistake of either." *Harwitz v. Selas Corp. of America*, 406 Pa. 539, 542, 178 A.2d 617, 619 (1962). Acting on this concept, we have in a long line of cases given arbitration clauses in uninsured motorist portions of automobile insurance policies a very broad reading, and have almost uniformly upheld the power of the arbitrator to decide the issue before him. See, e. g., *Harleysville Mut. Ins. Co. v. Medycki*, 431 Pa. 67, 244 A.2d 655 (1968); *Preferred Risk Mut. Ins. Co. v. Martin*, 436 Pa. 374, 260 A.2d 804 (1970). *See also Flightways Corp. v. Keystone Helicopter Corp.*, 459 Pa. 660, 331 A.2d 184 (1975). This approach, I am convinced, is not only required by our case law, but is also wise and salutory for a number of reasons which need not be elucidated here.

Nevertheless, this Court has never said that an arbitrator has carte blanche to render any award no matter how irresponsible it is or how flagrantly it may flout the terms of the contract. Thus in *Allstate Ins. Co. v. Fioravanti*, 451 Pa. 108, 299 A.2d 585 (1973), in an opinion by Mr. Justice (now Chief Justice) Eagen, we said:

"It is possible to hypothecate an arbitration award which imports such bad faith, ignorance of the law and indifference to the justice of the result as to cause us to give content to the phrase 'other irregularity' since it is the most definitionally elastic of the grounds for vacatur. . . . *[W]e are not without power to act should such a case arise.*"

*Id.* at 116, 299 A.2d at 589 (footnote omitted) (my emphasis). *See also* 6A A. Corbin, Contracts § 1439, at 417 (1962) ("An award can be set aside for fraud or collusion, or for 'manifest disregard' of the law."). Fortunately, however, the situations are rare indeed when a court is justified in intervening to upset an arbitration award. In my view, this is such a case.

It is undisputed that the driver of the vehicle involved in the crash in which Mrs. Runewicz was injured was insured. Indeed, the parties to the accident settled Mrs. Runewicz's claim against the other motorist for the full amount of the other driver's policy, $25,000, and the sum was paid by the other driver's insurer. It simply cannot be said that the other driver was "uninsured" within the meaning of Mrs. Runewicz's policy, for the uninsured motorist coverage of that policy rests totally on the condition that the offending motorist will in fact be uninsured. *Grange Mut. Cas. Co. v. Pennsylvania Mfgrs' Ins. Co.,* 438 Pa. 95, 263 A.2d 732 (1970), cited by the majority, lends no support to its position, for in that case the issue was whether the person operating an insured automobile had permission to do so and hence was not an uninsured motorist. This was a question of fact for the arbitrator to resolve. Here, however, there is no such question; what the arbitrators have done here is to create a coverage where, by the plain words of the contract, none existed.

I do not share the majority's apparent fear that a reversal of the award in this case will encourage needless litigation over arbitrators' decisions in insurance cases. For this is not a case in which an award ought to be set aside because of a seeming "mistake," *Harwitz, supra,* of law or fact. Nor is

this a case where a court reaches to find "constructive fraud" in an interpretation it disagrees with. See *Fioravanti, supra*, 451 Pa. at 115, 299 A.2d 585. Instead, this is a case in which, despite the full hearing accorded, the arbitrators' decision could only have been actuated by "prejudice rather than principle." *Runewicz v. Keystone Ins. Co.*, 234 Pa.Super. 355, 361, 338 A.2d 602 (1975) (opinion of Spaeth, J., in support of reversal).

Just as the courts should be steadfast in upholding the validity of arbitration awards against unwarranted appeals for judicial intervention, so should they be diligent to strike down an award which palpably is made "in bad faith, ignorance of the law [or] indifference to the justice of the result." *Fioravanti, supra*. For an arbitrator to say that an insured vehicle is one which is uninsured is such a flagrant case. Judicial approval of an award so irresponsible will, I fear, serve to erode the public confidence on which the arbitration system in the field of casualty insurance depends; such approval can only increase the resort to the courts that the majority apparently believes its decision will help avert.

I would affirm the order of the Superior Court.

EAGEN, C. J., joins in this opinion.