443 A.2d 344

**JAMES D. MORRISEY, INC., Appellant,**

v.

**GROSS CONSTRUCTION CO., INC., Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 2, 1981.

Filed March 19, 1982.

Carl F. Hepler, Jr., Bensalem, for appellant.

Alan G. Gershenson, Philadelphia, for appellee.

Before WICKERSHAM, POPOVICH and WATKINS, JJ.

OPINION BY POPOVICH, J.:

The appellant, James D. Morrisey, Inc., appeals from the lower court's order denying its "Petition To Vacate Arbitration Award." We vacate and remand for proceedings consistent with this opinion.

The facts consist of the following: Appellant, a sub-contractor, entered into two separate agreements with appellee, Gross Construction Co., Inc.—a general contractor, concerning two phases of a single job. The first contract was signed in August, 1971 (Phase I) and the second was executed in January, 1974 (Phase II).

On December 23, 1976, appellant filed a two count Complaint in Assumpsit against appellee claiming $12,925.00 in Count I and $749.92 in Count II for goods and services delivered to appellee's jobsite in the Regency Park Apartments in Philadelphia (Phase II). As with Phase I, Phase II of the work was governed by a written document containing an arbitration provision calling for all controversies arising under the contract to be resolved by means of arbitration. The clause provided in part that: "The rules of the American Arbitration Association shall control and any award rendered in the arbitration shall be binding and conclusive upon the parties and shall not be subject to appeals or retrying by any court. . . . Three arbitrators shall be appointed; Contractor shall designate an arbitrator, Sub-contractor shall designate an arbitrator, and the two arbitrators so chosen shall designate a third." Thus, when the dispute arose, both sides agreed to submit the matter to binding

arbitration, and, in accordance therewith, appellant's Complaint was discontinued.

On September 1, 1977, appellant filed a demand for arbitration with the American Arbitration Association (AAA). Appellee responded by filing a counterclaim, alleging that $6,907.38 was paid to the appellant for work that was never performed. In answer, appellant amended its original claim to include a request for an additional $29,697.75. According to appellant, such figure related to monies due it from appellee for services rendered under the August, 1971 agreement (Phase I). In particular, appellant averred appellee owed it: (a) $20,900.00 for retaining work; and (b) $8,797.75 for extra excavation. All parties agree that the added amount sought, albeit relating to work performed in 1971, was not billed to appellee until the third week in November, 1977, which, interestingly enough, came after appellee filed its counterclaim involving Phase II of the job.

After the appellant selected its arbitrator (Robert Lipschutz) and appellee chose its representative (Philip Steinman), the two arbitrators then decided upon the third panel member (Frederick Milstein). The arbitration hearing was conducted in June of 1978, and the award that was issued, which was a unanimous one, appears in part below:

"1. The claim of [appellant], against [appellee], is allowed in the amount of SEVEN THOUSAND TWO HUNDRED EIGHTY–FOUR DOLLARS AND THIRTY–SIX CENTS ($7,284.36) plus interest at the rate of eight percent (8%) per annum from December 31, 1975.

2. The counterclaim of the [appellee] against the [appellant] is allowed in the amount of FIVE THOUSAND FOUR HUNDRED FIFTY–SEVEN DOLLARS AND THIRTY–SIX CENTS ($5,457.36).

3. Therefore, the [appellee] shall pay to the [appellant] the sum of ONE THOUSAND EIGHT HUNDRED TWENTY–SEVEN DOLLARS ($1,827.00) plus interest at the rate of eight percent (8%) per annum from December 31, 1975 . . . ."

The award, as entered, denied appellant's claim regarding the retainage work. Thus, appellant filed a petition seeking to vacate the aforementioned award on the basis that, *inter alia*, "[t]he decision was the result of bias" "on the part of one or more of the Arbitrators so as to totally [sic] deprive [it] of a fair hearing[.]" More precisely, appellant urged, that the third member of the panel (Mr. Milstein) "failed to disclose the fact that he had business dealings with Gross Construction Company, Inc.[,]" and, further, "that he is presently a sub-contractor of Gross Construction Company, Inc." (Appellant's "Petition to Vacate Arbitration Award," Points 19 and 20) Appellee did not deny these factual allegations. (*See* "Answer and New Matter of Gross Construction Company, Inc. to Petition to Vacate Arbitration Award," Points 19 and 20)

After the petition to vacate was filed, arbitrators Milstein and Lipschutz were deposed by the parties. As a result thereof, the following information surfaced: Prior to the June 6th arbitration, Milstein conceded that he had done, and in fact was continuing to do, subcontracting work for appellee; that this business relationship had existed for some "10 to 15 years or longer." In fact, Milstein admitted that on the date set for the hearing, his company was "do[ing] . . . subcontracting work in the job that was arbitrated, that is, at the Regency Park Apartments[.]" Also, he acknowledged that the subcontracting work done at the site for the appellee encompassed "both Phase I and Phase II[.]" Interestingly enough, Milstein, after being assigned as the neutral panelist, stated that his reason for not disclosing his business association with appellee was because "[he] wasn't asked." However, Milstein did make the other arbitrators aware, during their deliberations, of his business dealings with appellee.[1]

1. The *effect* of Milstein's disclosure of his familiarity with appellee's business operation became evident during Mr. Lipschutz's deposition.

   Mr. Lipschutz recalled that the appellant had sought recoupment of monies allegedly due and owing it by the appellee under two contracts. One concerned Phase I of the Regency Park Apart-

The lower court, after the presentation of all the evidence and the hearing of oral argument, denied appellant's petition. This appeal followed.

The issue, concisely stated, is whether the common law arbitration award should be vacated due to the fact that one of the arbitrators had an on-going business relationship with one of the party litigants, a point which was never disclosed prior to the entry of the award.

Since the present dispute involves common law arbitration, our scope of review is limited. *Runewicz v. Keystone Insurance Co.*, 476 Pa. 456, 383 A.2d 189 (1978). As was stated in *Allstate Insurance Co. v. Fioravanti*, 451 Pa. 108, 114, 299 A.2d 585, 588 (1973),

" '[i]f the appeal is from a common law award, Appellant, to succeed, must show by clear, precise and indubitable evidence that he was denied a hearing, or that there was fraud, misconduct, corruption or some other irregularity of this nature on the part of the arbitrator which caused

ments—which dealt in part with retainage work and amounted to a dollar value of some $20,000.00, and the other concerned Phase II of the same project. It was appellee's position, as recounted by Lipschutz, that the claim attendant to Phase I had been incorporated into the price of the Phase II contract. Appellant, on the other hand, contended that the amount owed under the retainage claim had not been paid and was not built into Phase II.

During the course of the discussion among the arbitrators, Lipschutz stated how Milstein disclosed his past dealings with appellee, and how he (Milstein) opined that "it would have been a practice of Gross" to have included the retainage "in the second Phase contract." Lipschutz admitted that Milstein's experience with Gross Construction Company "was a factor" in his decision relative to the retainage question. Furthermore, he stated, had Milstein been totally unbiased, he:

"might very possibly have taken a different position on this retainage and what was done, and that was the main thrust of the decision. There's where most of the money was—in saying 'Well, they [—the other arbitrators—] couldn't understand a business practice like that or they could,' or whatever, and there may have been more discussion that ensued that would have made a more equitable decision, if that's the proper term to use, it's hard to get a total neutral, but it may have helped the situation. I approached [the decision] on the basis of fairness and honesty and best intelligence, but that sometimes isn't the proper answer because if the other two arbitrators were successful subcontractors and leaning in one way, it does somewhat weight the decision." (R–63)

him to render an unjust, inequitable or unconscionable award, the arbitrator being the final judge of both law and fact, his award not being subject to disturbance for a mistake of either.' " (Citation omitted)

The irregularity mentioned above goes to the process employed in reaching the decision. *Press v. Maryland Casualty Co.*, 227 Pa.Super. 537, 539, 324 A.2d 403, 404 (1974). Consistent therewith, it cannot be "presumed that the parties intended or agreed to be bound by anything short of an honest exercise of the judgment of the arbitrators upon the questions submitted." *Speer v. Bidwell*, 44 Pa. 23 (1862). Thus, we must decide whether arbitrator Milstein's employment by appellee, which encompassed a period up to and including the arbitration process, disqualified him from serving in the capacity of "neutral" arbitrator. This requirement of an impartial arbitrator was dealt with in *Bole v. Nationwide Insurance Co.*, 475 Pa. 187, 379 A.2d 1346 (1977).

In *Bole*, an individual injured in an automobile accident, appellee, submitted a claim to his insurer, Nationwide Insurance Co., appellant. Nationwide refused payment. In accordance with the terms of the insurance policy, which provided for common law arbitration, appellee requested that the issue be submitted to arbitration, with each party choosing a "competent and disinterested arbitrator." Both sides selected an arbitrator, but appellee objected to Nationwide's choice because the individual, an attorney, had provided legal representation for Nationwide in the past. Despite appellee's disapproval, the arbitrator refused to disqualify himself, a hearing was conducted and an award was entered in favor of Nationwide.

Appellee's petition to vacate the award, on the ground that the arbitrator chosen by Nationwide should have disqualified himself, was denied by the lower court. An appeal to this Court, *Bole v. Nationwide Insurance Co.*, 238 Pa.Super. 138, 352 A.2d 472 (1975), resulted in a remand; however, the Court was divided on the scope of the remand. Our Supreme Court, after granting appellant's allowance of appeal, agreed with Judge VAN der VOORT, in an opinion

joined by then President Judge WATKINS, that "the award should be vacated and the case remanded for appointment of new arbitrators, because . . . prior representation of a party by an arbitrator should require disqualification of that arbitrator upon objection by the opposing party, with no showing of actual bias required." *Bole v. Nationwide Insurance Co., supra*, 475 Pa. at 190, 379 A.2d at 1347. The *Bole* Court felt that such action was justified, since the partisan arbitrator "should have disqualified himself in light of the contract calling for disinterested arbitrators[.]" *Id.*, 475 Pa. at 192, 379 A.2d at 1348.

It is granted that the parties here, unlike in *Bole, did not specifically* spell out the requirement in their contracts that they wanted "disinterested" arbitrators to sit in on their dispute. However, we find that by the litigants *specifically* agreeing that "[t]he rules of the American Arbitration Association shall control . . . " the resolution of any claim relating to the contracts, which rules, specifically section 18, request the prospective arbitrator to disclose "any circumstances likely to create a presumption of bias or which he believes might disqualify him as an impartial Arbitrator[,]" [2] to bring the case *sub judice* within the ambit of *Bole.*

2.  The entire section reads as follows:
    "Section 18.  Disclosure by Arbitrator of Disqualification—At the time of receiving his notice of appointment, the prospective Arbitrator is requested to disclose any circumstances likely to create a presumption of bias or which he believes might disqualify him as an impartial Arbitrator.  Upon receipt of such information, the Tribunal Clerk shall immediately disclose it to the parties, who if willing to proceed under the circumstances disclosed, shall, in writing, so advise the Tribunal Clerk.  If either party declines to waive the presumptive disqualification, the vacancy thus created shall be filled in accordance with the applicable provisions of this Rule."
    Based on the aforesaid, we consider Milstein remiss in not informing the AAA, upon receipt of his notice of appointment, of the circumstances likely to create a presumption of bias, or which might have been interpreted as grounds disqualifying him from serving as an impartial arbitrator.  *See Conner [Connor] v. Simpson*, 4 Sadler (Pa.) 105, 7 A. 161 (1886) (Where arbitrator was a partner of one of the parties to the dispute and concealed that fact until after the award was made, the court held the award void); *DePhillips v. Keystone Insurance Co.*, 58 Pa.D. & C.2d 183 (1972) (Award vacated where one

Moreover, our Supreme Court has acknowledged that in circumstances similar to the case at bar, "several courts . . . have required that the arbitrator disclose any potential conflict of interest to the parties." *Abramovich v. Pennsylvania Liquor Control Board,* 490 Pa. 290, 295 n. 5, 416 A.2d 474, 477 n. 5 (1980). Such a requirement is a laudable one, for it comports with the parties' entitlement to a "full and fair" hearing. *Smaligo v. Fireman's Fire Insurance Co.,* 432 Pa. 133, 247 A.2d 577 (1968); Anno., 56 A.L.R.3d 697 (1974). As a result, to allow a hearing to be conducted by one involved with a party to the proceeding could not in good conscience be labeled "fair" or consistent with the dictates of procedural due process. *Abramovich v. Pennsylvania Liquor Control Board, supra; see Dussia v. Barger,* 466 Pa. 152, 351 A.2d 667 (1976); cf. *Bole v. Nationwide Insurance Co., supra,* 475 Pa. at 195, 379 A.2d at 1350 (ROBERTS, J., Dissenting Opinion) (If a party in arbitration chooses an individual currently retained by the party, "the court might disqualify the [individual] in the present employment of the party, not on the basis of any provision of the arbitration agreement, but because the selection may conflict with common law standards of fairness in arbitration. The potential for gain to the currently retained [individual] may give rise to an inference that the [individual] so employed might be incapable of rendering a fair judgment."). Although not controlling, it is to be noted that by statute our Legislature has also recognized the importance of impartial arbitrators, allowing parties to challenge the award on the basis of the arbitrator's partiality. Section 10(b) of the Act of April 25, 1927, P.L. 381, 5 P.S. § 170(b) provides:

of three arbitrators failed to disclose, as mandated by the oath which he took, that he had in the past represented the defendant insurance company and that . his firm continued to represent defendant in automobile cases); cf. *A. Arthur Kober Co. v. Brook Developers, Inc.,* 2 Pa.D. & C.3d 371 (1976) (Where AAA and all parties were advised, prior to arbitration proceedings, that one of the arbitrators was socially acquainted with president of corporate plaintiff, and no objection was made to his serving, the award of the arbitrators was not set aside on the ground of possible prejudice).

"In either of the following cases the court shall make an order vacating the award upon the application of any party to the arbitration:

(a) . . .

(b) Where there was evident partiality or corruption on the part of the arbitrators, or any of them. . . . "

*See also Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968); 11 Standard Pa.Prac. Ch. 49, §§ 78 and 79 (1964).

The result we reach today is even more compelling when one considers that the parties to the contracts "must consent to arbitration as the method of resolving disputes." *Abramovich v. Pennsylvania Liquor Control Board, supra*, 490 Pa. at 295, 416 A.2d at 477. Also, vacating the order instantly is prudent when viewed in light of a cogent statement by Judge VAN der VOORT, made in response to circumstances similar to the one at hand:

"Because they are the final decision-makers on the law and facts of the case, whose decision is final absent fraud or misconduct, arbitrators under common law stand as judges. Their function is judicial, and their conduct must be robed in judicial impartiality. Without reflecting in any degree upon [the arbitrator's] honesty or integrity and without deciding to what degree [the] arbitrator[, who was requested to disqualify himself from the panel,] may or may not be partisan, I would hold that his prior professional representation of appellee cast a cloud upon his impartiality. *Arbitration is an important function in the law wherein decisions are cloaked with finality. While it is not reasonable to expect to find three arbitrators with no innate or acquired sympathies as to certain cases, it is right to ask, at the least, that each be impartial to the extent of never having been in the employ of any of the litigants. To have a lesser standard would be dishonest to the expectation held by the parties and the needs of justice that a decision will be rendered by disinterested*

*triers of fact and law."* (Emphasis added) (Footnote omitted) *Bole v. Nationwide Insurance Co., supra,* 238 Pa.Super. at 147, 352 A.2d at 479.

Given the fact that Mr. Milstein had an on-going business relationship with the appellee, which included work being done on the jobsite in dispute, we can perceive of no way in which the effectiveness of the arbitration process would have been hampered by the simple requirement that the arbitrator disclose to the parties any dealings that might have created an impression of possible bias. *Commonwealth Coatings Corp. v. Continental Casualty Co., supra; see also Abramovich v. Pennsylvania Liquor Control Board, supra; Bole v. Nationwide Insurance Co., supra.*

Appellant is entitled to have his claim heard by a panel of arbitrators that is not biased against one litigant and favorable to another, which is not to say that the arbitrator here was biased, for we need not make such determination in deciding the case. *Bole v. Nationwide Insurance Co., supra.* Ergo, the decision to keep an arbitrator on a panel that had, or has, business dealings with one of the parties should be made *after* said information is disclosed to the party affected. Absent such disclosure, the award entered is subject to being overturned. *Commonwealth Coatings Corp. v. Continental Casualty Co., supra.* Consequently, the award in this case and the order of the lower court in support thereof cannot stand.

Order of the lower court is vacated and the case is remanded to the Court of Common Pleas of Montgomery County for proceedings consistent with this opinion.