## Saxton v. Cedar Hill Memorial Park Inc.

*Richard L. Scheff,* for plaintiff.
*Richard F. Stevens,* for defendant.

WALLITSCH, *J.,* January 5, 1993—This matter comes before the court on plaintiff's motion for temporary restraining order, preliminary injunction, and to compel arbitration in accordance with a buy-sell agreement. The case was initially assigned to the Orphans' Court of Lehigh County but, by agreement of counsel, the matter was transferred to the court of common pleas, civil division.

This case involves the valuation of shares of stock of Cedar Hill Memorial Park, Inc. (hereinafter "Cedar Hill") which were owned by G. Franklin Saxton, deceased, who died on August 28, 1992. The personal representative of the estate brought this motion, alleging that court intervention was necessary to prevent certain injustices that were perceived from correspondence between counsel. However, for the reasons set forth in this opinion, not only do we believe that such "injustices" were misperceived but that the plaintiff erred in appointing one of the members of the firm repre-

senting the estate as an arbitrator under the terms of the buy-sell agreement at issue.

Since the 1960's, G. Franklin Saxton, and his brother, Samuel B. Saxton, were shareholders of the stock of the defendant. Both brothers were officers of this company which owns and operates a cemetery and crematorium in Allentown, Lehigh County, Pennsylvania. On July 13, 1981, G. Franklin Saxton and the defendant entered into an agreement which required, inter alia, that upon the death of G. Franklin Saxton, the defendant would purchase his shares of stock in the corporation. It is the valuation of those shares that has now come into dispute. The agreement further provided that, if the defendant and the deceased stockholder's personal representative could not agree upon the value of those shares under certain circumstances, the value of those shares would be determined by arbitration. The agreement provided as follows in this regard:

"[I]f they are unable to come to an agreement within 30 days after the qualification and appointment of such personal representative then the value of each share of stock of the deceased stockholder shall be determined by arbitration, company, and the personal representative of the estate each to name an arbitrator, such two arbitrators to appoint a third arbitrator, and the decision of the majority of arbitrators to be binding on all parties; if either party fails to appoint an arbitrator within five days after written notice served by the other party to do so, such other party may name the arbitrator for the party failing to appoint; if the two appointed arbitrators shall fail within five days after their appointment to select a third arbitrator, any judge of the Court of Common Pleas of Lehigh County,

Pennsylvania, may appoint a third arbitrator upon request in writing from any party hereto or the personal representative of any party hereto."

On August 28, 1992, G. Franklin Saxton died and his son, Guy N. Saxton, was appointed executor of the estate. Guy N. Saxton then employed the law firm of Montgomery, McCracken, Walker & Rhoads to represent him as the personal representative of the estate of G. Franklin Saxton. Thereafter, a lawyer in that law firm, on behalf of Guy N. Saxton, notified the defendant that Stephen W. Armstrong, Esquire, had been appointed as the arbitrator for the estate. Attorney Armstrong is also a member of the law firm of Montgomery, McCracken, Walker & Rhoads.

After objection to Mr. Armstrong was made by the corporation and correspondence flowed between counsel involved in this case, the instant motion was filed and a temporary restraining order issued on December 7, 1992. On December 21, 1992, at the time and place set for hearing, counsel appeared and made certain representations to the court. First of all, counsel for the defendant represented that, despite plaintiff's assertions, the corporation was not intending on proceeding with arbitration in accordance with any other agreement other than the buy-sell agreement dated July 13, 1981. The issue of whether Mr. Armstrong can properly serve as an arbitrator when his law firm represents one of the parties in this matter is the issue which counsel have asked this court to address and then to order an appropriate remedy. Both counsel briefed this issue and argued same on the date set for hearing. For the reasons set forth herein, we find that Mr. Armstrong is not qualified to serve as an arbitrator in this matter and that he must be replaced.

Both counsel address the issue of whether common law or statutory arbitration was contemplated by the agreement. This court agrees with the plaintiff that, since the agreement merely provided for arbitration without specifying common law or statutory arbitration, it is common law arbitration rules which apply. 42 Pa.C.S. §7302(a); *Gallagher v. Educator and Executive Insurers, Inc.,* 252 Pa. Super. 414, 381 A.2d 986 (1977).

The plaintiff contends that, under common law arbitration, Mr. Armstrong is qualified to serve. Plaintiff contends that, unless the contract calls for "disinterested" and/or "non-partisan" representation, the parties may not object to the appointment of an arbitrator on the basis of partisanship. First, it is clear that the buy-sell agreement does not indicate anything about whether the arbitrators to be appointed may be non-partisan or partisan.

The agreement is totally silent in this regard. Plaintiff reads the case of *Bole v. Nationwide Insurance Co.,* 475 Pa. 187, 379 A.2d 1346 (1977), to support his position. We do not agree with plaintiff's reading of that case. In the *Bole* case, a dispute involving common law arbitration, there was language indicating that each party was to choose a "competent and disinterested arbitrator." The court held that when a contract calls for "disinterested" arbitrators, prior representation of one of the parties by a designated arbitrator will disqualify that arbitrator upon objection of the opposing party. A footnote in that opinion, however, is what the plaintiff relies upon rather than upon the holding itself. That footnote reads as follows:

"2. In light of the contract provision calling for disinterested arbitrators, we agree with judge Van der Voort's statement. If a contract calling for commonlaw arbitration allowed the selection of partisan arbitrators,

the above-quoted statement would not then be applicable." *Id.* at 191, 379 A.2d at 1348.

The buy-sell agreement before this court did not "allow the selection of partisan arbitrators." The agreement, as stated before, is silent in that regard. Plaintiff cites no case that indicates, as a matter of law, that silence in an agreement means that the parties' selected arbitrators shall be partisan. Even if that were the law, we have a situation where this particular "partisan" arbitrator is a member of the law firm representing the plaintiff himself as personal representative of the estate. Other language of the case of *Bole v. Nationwide Insurance Company, supra,* is more on point than the relied upon footnote. As the dissenting opinion written by Justice Roberts, and concurred in by now Chief Justice Nix provides:

"Unlike here, if the party chooses an attorney currently retained by the party, a different conclusion might be reached. In those circumstances, the court might disqualify the attorney in the present employment of the party, not on the basis of any provision of the arbitration agreement, but because the selection may conflict with common law standards of fairness in arbitration. The potential for gain to the currently retained attorney may give rise to an inference that the attorney so employed might be incapable of rendering a fair judgment." *Bole, supra* at 195, 379 A.2d at 1350.

On that basis, as well as upon the well-reasoned opinion of Judge Wieand, formerly a member of this court and now on the Pennsylvania Superior Court, in the case of *Donegal Insurance Co. v. Longo,* 415 Pa. Super. 628, 610 A.2d 466 (1992), we disqualify Mr. Armstrong. Judge Wieand, making no distinction between common law and statutory arbitration in his opinion sets forth the general rule that "since arbitrators

are generally selected to act in a quasi-judicial capacity in place of a court, they must ordinarily be impartial and non-partisan." (citing 5 Am.Jur.2d, Arbitration and Award, §98.) However, Judge Wieand, in finding that a lawyer cannot serve as an arbitrator while he simultaneously represents one of the parties to the arbitration, went further than partisanship. He found that because the arbitrator was an employee of one of the parties and owed them a fiduciary duty of loyalty, his role as arbitrator conflicts with basic standards of due process.

This case represents a more serious problem than the one in *Donegal Insurance Company v. Longo, supra*. In *Donegal Insurance Company*, a proposed arbitrator was simultaneously representing one of the parties in an unrelated matter. In the present case, Mr. Armstrong's law firm is representing the plaintiff in the *present* matter. If a person is disqualified to act as an arbitrator himself if he is a party to the dispute, see 5 Am.Jur.2d Arbitration and Award §99, it seems only logical that an attorney representing that party's interests in the case at hand should suffer the same disqualification. For these reasons, we disqualify Mr. Armstrong as acting as an arbitrator in this matter.

Since this issue could not be said to be "well settled" in the Commonwealth, we decline to find that the plaintiff has given up his right to select another arbitrator. Therefore, we will allow plaintiff to choose another arbitrator under the agreement within the time limit set forth in the order accompanying this opinion.

## ORDER

Now, January 5, 1993, upon consideration of plaintiff's petition for a preliminary injunction, the petition

538

is dismissed in accordance with the opinion attached hereto.

It is further ordered that the plaintiff, within ten days after the date of this order, appoint an appropriate arbitrator under the terms of the buy-sell agreement of July 13, 1981.