420 A.2d 452

**Charles PAUGH, Administrator**

v.

**NATIONWIDE INSURANCE COMPANY, Appellant.**

**John RUSIDOFF**

v.

**NATIONWIDE INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued April 10, 1979.

Filed April 3, 1980.

Petition for Allowance of Appeal Denied Feb. 28, 1981.

Lee C. McCandless, Butler, for appellant.

Jerome M. Libenson, Butler, for appellees.

Before SPAETH, VAN der VOORT and WATKINS, JJ.

SPAETH, Judge:

This is an appeal from an order confirming awards in a common law arbitration.

On June 20, 1973, Carolyn Rusidoff was driving her car, which was insured by appellant, Nationwide Insurance Company, south on Route 38 toward Butler, Pennsylvania. In the car with Mrs. Rusidoff were her husband, John Rusidoff, who was sitting in the front seat, and her sister, Joyce Arlene Paugh, sitting in the back seat. A tractor–trailer proceeding in the opposite direction struck a deer, propelling

it through the windshield of the Rusidoff car. The deer struck John Rusidoff on the head, next struck Joyce Paugh, and then went out the rear of the car. As a result, Joyce Paugh was killed and John Rusidoff was injured.

In May 1974, appellee Charles Paugh, as administrator of the estate of Joyce Paugh, and appellee John Rusidoff filed, respectively, a wrongful death and survival action and a personal injury action against DeBolt Transfer, Inc., alleging, *inter alia* :[1]

.    .    .    .    .

2. Defendant is a Pennsylvania Corporation, with its place of business at 335 E. 7th Avenue, Homestead, Allegheny County, Pennsylvania.

3. At all times material to this action, defendant was an ICC and PUC certificated motor carrier of property and operated in and served the area between Butler, Pennsylvania and Berwick, Pennsylvania.

.    .    .    .    .

6. At all times material to this action, defendant owned and operated a truck tractor trailer, license no: CJ81925, driven by Don Mignogna, who was then and there in the course of and within the scope of his employment.

7. At all times material to this action, defendant owned and operated a truck tractor trailer license no: TC19182, driven by J. Whitmoyer, who was then and there in the course of and within the scope of his employment.

8. On June 20, 1973, defendant's tractor trailer, driven by J. Whitmoyer, entered the Pullman Standard Plant in Butler, Pennsylvania, at 6:32 A.M. Defendant's tractor trailer was loaded with forty–four (44) Rwy. Car Finished Axles, consigned to Berwick Forge & Fabricating, W. Ninth Street, Berwick, Pennsylvania pursuant to a bill of lading, shipper's

1. What follows is quoted from appellee's Paugh's complaint. However, appellee Rusidoff's complaint was in all material respects identical.

no: 2557. Defendant's driver departed the Pullman Standard premises at 8:19 A.M. on June 20, 1972.

9. On June 20, 1973, defendant's tractor trailer, driven by Don Mignogna, entered the Pullman Standard Plant in Butler, Pennsylvania at 6:54 A.M. Defendant's tractor trailer was loaded with forty–eight (48) Rwy. Car Finished Axles, consigned to Berwick Forge & Fabricating, W. Ninth Street, Berwick, Pennsylvania, pursuant to a bill of lading, shipper's no: 2558. Defendant's driver departed the Pullman Standard premises at 8:19 A.M. on June 20, 1973.

10. On or about June 20,1973, at about 8:30 A.M., plaintiff's decedent was a passenger in the rear of the automobile of Carolyn Rusidoff, which was proceeding south on Route 38 from Hooker, Pennsylvania, to Butler, Pennsylvania, when one of defendant's tractor trailers proceeding north on the aforesaid Route 38 negligently struck a deer causing it to be propelled into and through the windshield of the Rusidoff automobile, striking plaintiff's decedent's head. Said deer continued its flight through the rear window of plaintiff's automobile. This impact caused serious injury, pain and suffering, all of which resulted in the damage and death of plaintiff's decedent [in the Rusidoff complaint: . . . in the damage to the plaintiff].

The complaints were consolidated for trial, and on February 17, 1976, a jury returned a verdict on both complaints for the defendant DeBolt Transfer, Inc., "with reservations, due to the evidence provided." The judgments entered on the verdicts were appealed to this court, and on December 2, 1977, we held that the verdicts were so ambiguous as to be insufficient to represent verdicts, and we therefore ordered a new trial. *Rusidoff v. DeBolt Transfer, Inc.*, 251 Pa.Super. 208, 380 A.2d 451 (1977).

In the meantime, on October 6, 1976, appellees instituted the present arbitration proceeding against Nationwide. Condition No. 8 of Nationwide's policy provided for arbitration

if any person making a claim hereunder and the Company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the Insured, or do not agree as to the amount payable hereunder . . .

Section II (d) of the policy defined an "uninsured automobile" as

an automobile which causes bodily injury to an Insured arising out of physical contact of such automobile with the Insured or with an automobile which the Insured is occupying at the time of the accident, provided:

(1) there cannot be ascertained the identity of either the operator or owner of such "hit–and–run automobile" . . .

In the arbitration proceeding it was appellees' position that they could not identify the driver of the tractor–trailer truck that struck the deer, propelling it through the windshield of the Rusidoff automobile and killing Joyce Paugh and injuring John Rusidoff. At the first hearing before the arbitrators Mrs. Rusidoff testified that after impact, she saw two tractor–trailer drivers pull off the road, inspect one of the trailers, and then return to their vehicles and leave the scene of the accident. She then testified:

Q: You don't know the names of these trucking companies?

A: Not for sure, no.

Q: They never came back and identified themselves?

A: No, they did not.

(4/25/77 N.T. 26)

The other witnesses at the first hearing were the state trooper who investigated the accident, and the ambulance driver who answered a call to go to the scene. The ambulance driver was not asked, and did not say, anything about the identity of the truck driver. The trooper read into evidence a statement that Mrs. Rusidoff had given him, in which she had said, "There was a man that stopped and I told him of the trucks and he went after it." (4/5/77 N.T. 7) The trooper then testified:

Q. Okay. This man she referred to did come back and gave you a license number; is that correct?

A. That is correct, sir.

Q. It did not tie in with anyone who was at the scene at time time [*sic*]; is that right?

A. That is correct.

Q. And you followed through on other leads in your investigation, but were never able to identify the vehicle that she talked about; is that correct?

A. That is correct.

(4/5/77 N.T. 7–8)

At the second hearing before the arbitrators John Rusidoff testified, but his testimony concerned only the injuries he had suffered in the accident. The balance of the evidence at the second hearing was offered by Nationwide. This evidence was intended to show that Nationwide should not be held liable because: in its view of the facts, "there was no contact whatsoever between the hit and run automobile and the insured or the insured vehicle" (6/7/77 N.T. 25); no negligence had been shown on the part of the alleged hit and run vehicle; and no proof of loss had been filed. Immediately after the second hearing, the arbitrators, with one arbitrator dissenting, entered an award of $10,000 to appellee Paugh, as administrator of the estate of Joyce Paugh, and $7,500 to appellee Rusidoff.

On June 15, 1977, Nationwide filed a petition to set aside the awards. While this petition was pending, Nationwide learned by way of the Atlantic Advanced Reports dated January 20, 1978, of this court's decision in *Rusidoff v. DeBolt Transfer, Inc., supra*. On March 23, 1978, Nationwide filed a second petition to set aside the awards. The petition cited this court's decision in *Rusidoff v. DeBolt Transfer, Inc., supra*, and attached as exhibits a copy of the Paugh and Rusidoff complaints against DeBolt, which have been quoted above. The petition then alleged: that the complaints disclosed that appellees, as claimants before the arbitrators, "did know the identity and ownership of the

vehicle involved and, hence, it was not an unidentified vehicle"; that appellees' claim "was purposely, and wilfully and fraudulently presented [to the arbitrators] as a hit and run case and as if the identity of both the operator and owner of the other vehicle was not known when, in fact, all parties, including [appellees] and the attorney, had either sworn to or certified to the identity of the other vehicle in the proceedings in Allegheny County [when the complaints were filed] some three years before;" and that the arbitrators "lacked jurisdiction to hear and decide the case" since on the "true facts" it was not an uninsured motorist claim. Record at 38a–39a.

On May 30, 1978, the lower court heard testimony on Nationwide's petitions to set aside the awards, and on July 20, 1978, the court dismissed both petitions. In its opinion, the court stated:

> The burden was not on Paugh in the hearing before the Board of Arbitrators to establish that decedent had not been involved in a hit and run accident. That was Paugh's position. Paugh proved a hit and run accident, and under the terms of the uninsured motorist clause the Board of Arbitrators made an award to Paugh. Paugh committed no fraud on either Nationwide or the Board of Arbitrators. Nationwide simply failed to refute the testimony offered by Paugh that there had been a hit–and–run accident. If Nationwide had been aware of the action against DeBolt and had offered the record in that case, the Board of Arbitrators could properly have reached the same result.

(Slip op. at 4)

On July 31, 1978, the lower court ordered that appellees' petition to confirm the arbitrators' awards be entered, and this appeal followed. While the appeal was pending, the case of Paugh and Rusidoff against DeBolt Transfer, Inc., was retried in the Court of Common Pleas of Allegheny County. According to appellees' brief, on September 19, 1978, verdicts for appellees were returned as follows: "verdict for the plaintiff [Charles Paugh, as administrator of the

estate of Joyce Paugh] in the amount of $73,921.25 in the survivor's action, and a verdict of zero in the wrongful death action;" and "verdict for John Rusidoff in the amount of $9,975.30." Appellees' brief at 4. Appellees' brief further states that on November 29, 1978, "[S]ettlements [were] paid" on these verdicts. *Id.* at 3.

−1−

Nationwide argues that the arbitration awards should be set aside because the arbitrators denied it its right to a fair hearing.

■ It is settled that a court may set aside an arbitration award if the conduct of the arbitrators was such as to deny the parties a fair hearing. *Smaligo v. Fireman Fund Insurance Co.*, 432 Pa. 133, 247 A.2d 577 (1968); *Harwitz v. Selas Corp. of America*, 406 Pa. 539, 178 A.2d 617 (1962). In *Smaligo*, the panel refused to hear a physician's testimony on a decedent's loss of future earnings. In setting aside the award, the Court stated:

> This was not a mere mistake of law or of fact binding upon all parties of the court. The arbitrators' failure to regard Dr. Parson's testimony of any import resulted in Smaligo's being denied a full and fair hearing.

432 Pa. at 138, 247 A.2d at 580.

■ The right to a fair hearing comprises the right to notice and the right to an opportunity to be heard. *Allstate Insurance Co. v. Fioravanti*, 451 Pa. 108, 299 A.2d 585 (1973). In *Mellon v. Travelers Insurance Co. et al.*, 267 Pa.Super. 191, 406 A.2d 759 (1979), the arbitrators in an uninsured motorist claim awarded a claimant $10,000 on each of two policies, notwithstanding that the claimant had never asserted the right to recover under either of the policies. In setting aside the award, a panel of this court (Cercone, P. J., dissenting), stated:

> Notice and the opportunity to be heard are essential elements of a fair hearing. . . . Here, appellants were denied their right to notice, and so their right to be heard. They were never told that the panel [of arbitra-

tors] might enter awards . . . on claims . . . never made.

267 Pa.Super. 197, 406 A.2d at 762 (citations omitted).

■ Nationwide argues that the arbitrators denied it a fair hearing because they decided the issue of liability before hearing any defense evidence. There were two hearings before the arbitrators. It appears that in fact the arbitrators did decide the issue of liability after the first hearing, at which only appellees presented evidence. However, at the hearing before the lower court on Nationwide's petition to set aside the awards, all three arbitrators testified that it was their understanding that they were to decide the issue of liability after the first hearing.[2] It may be that the arbitrators were mistaken in their understanding, but if so, Nationwide did nothing to correct their mistake. Its counsel did not indicate that he wished, or was prepared, or needed a continuance, to present evidence.[3] In any event, at the second hearing Nationwide's counsel was given the opportunity to present evidence, and he did present evidence. This evidence was considered by all of the arbitrators, and although it persuaded one of the arbitrators to change the decision he had made after the first hearing, and to hold that Nationwide was not liable, it did not persuade the other two arbitrators.[4] It cannot be maintained in these circum-

2. For example, Arbitrator Norman Jaffee testified: "There was no question that at the end of the first day's hearing in which we thought that there was the end of the testimony of liability that we agreed that liability would be found in favor of the claimants. . . I recollect that we thought that there was a definite indication that there would be no further testimony on behalf of the defendant on the question of liability." (5.30.78 N.T. 58)

3. Arbitrator Jaffee testified:
   Q: Mr. McCandles [counsel for Nationwide] didn't ask for a continuance, did he?
   A: No.
   Q: Did he indicate at the hearing that he had any witnesses?
   A: No.
   Q: Did he indicate that he would bring some at a later date?
   A: No.
   (N.T. 58)

4. Arbitrator Silvio P. Cerchie testified:

stances that the arbitrators denied Nationwide a fair hearing.

–2–

Nationwide also argues that appellees' failure to disclose at the arbitration hearings information from their civil suit identifying the tractor–trailer driver constituted fraud and misconduct.

■ It is settled that an arbitration award may be set aside for fraud, misconduct, corruption or similar irregularity leading to an unjust, inequitable or unconscionable award. *Runewicz v. Keystone Insurance Co.*, 476 Pa. 456, 383 A.2d 189 (1978). *Allstate v. Fioravanti, supra, Harwitz v. Selas Corp. of America*, 406 Pa. 539, 178 A.2d 617 (1962). In discussing the term "similar irregularity," the Supreme Court has said:

It is possible to hypothecate [*sic*] an arbitration award which imports such bad faith, ignorance of the law and indifference to the justice of the result as to cause us to give content to the phrase "other irregularity" since it is the most definitionally elastic of the grounds for vacatur. *Allstate v. Fioravanti, supra*, 451 Pa. at 116, 299 A.2d at 589.

■ It may be granted that the cases have considered what standard of conduct should be applicable to the arbitrators, rather than to the claimants who testify before the arbitrators. However, an award may be "unjust, inequita-

Q: And the award that was finally rendered wasn't decided until after the second hearing, is that correct?
A: The award as entered, that's correct. The award that was entered was decided formally after the second hearing. We had preliminarily made a determination after the first hearing. However, after the defense had put in its testimony, I had filed a dissent.
Q: And the other two arbitrators heard and considered it also, did they not?
A: Certainly.
Q: They were sitting there, were they not?
A: We were all sitting there. I'm sure that they did.
(5/30/78 N.T. 69–70)

ble or unconscionable" either because of the arbitrators' conduct or because of the claimants'. It is our opinion that here there was sufficient "irregularity" to render the award "unjust" and "inequitable." By failing to disclose that they had identified the driver in their trespass complaints, and by offering testimony indicating that the driver was unknown, appellees led the arbitrators to believe that they had jurisdiction to hear the claim, and they precluded the arbitrators from fashioning an award guarding against a possible double recovery.

Appellees have cited two opinions by this court as legal precedent for simultaneously pursuing a trespass claim in common pleas, naming a driver, and an uninsured motorist claim before arbitrators, alleging that the same driver is unknown. Whether such claims may properly be simultaneously pursued is not at issue here. What is at issue is whether a claimant may represent by testimony before the arbitrators that the driver is unknown while withholding from the arbitrators the fact that he has already filed a trespass claim identifying the same driver. Neither of the two opinions cited by appellees sanctions such nondisclosure.

In *Press v. Maryland Casualty Co.*, 227 Pa.Super. 537, 324 A.2d 403 (1974), a plaintiff filed a trespass claim against the driver of a vehicle that had collided with the plaintiff's vehicle. Upon deposition of the defendant driver, the plaintiff learned that another driver, who was unidentified, had collided with the defendant's vehicle, causing the collision with the plaintiff. Thereupon the plaintiff filed an uninsured motorist claim. The arbitrators entered an award in his favor, on condition that the award be placed in escrow, to be paid to the plaintiff only to the extent that his recovery against the defendant in the trespass claim was less than the award. We held that this conditional award was proper in that it precluded a double recovery, one recovery in the arbitration claim and another, overlapping recovery in the trespass claim. Thus *Press* and this case are very different. In *Press* the arbitrators were able to fashion an appropriate award because they were informed of the plaintiff's claim in

trespass. Here the arbitrators were *un*able to fashion an appropriate award because they were *not* informed of the plaintiffs' (appellees') claim in trespass, this being so not only because appellees did not tell the arbitrators of the claim in trespass but also because their evidence represented that the driver was unknown.

In *Smith v. Employer's Liability Assurance Corporation, Ltd.*, 217 Pa.Super. 31, 268 A.2d 200 (1970), the victim of an automobile accident did file a trespass claim against a named driver and an uninsured motorist claim. There, however, the victim testified to the arbitrators that the other vehicle bore the name "Mushroom Transportation Company of Philadelphia." Thus again, there was full disclosure by the claimant on the issue of the driver's identity. There was no such disclosure by appellees here.

The lower court erred in holding that it was Nationwide's burden "to refute the testimony offered by Paugh that there had been a hit–and–run accident." Slip op. at 4. The burden of proving a claim is always on the claimants, not the carrier. To be sure, Nationwide *might* have known, and perhaps if it had made a more careful investigation, *would* have known, that there was reason to believe that the driver was in fact not unidentified; and if Nationwide *had* known that fact, it might have prevailed before the arbitrators. All of this is beside the point, however. The point is that Nationwide did *not* know, and that appellees *did* know, that there was reason to believe that the driver was not unidentified, and that nevertheless, appellees' claim was presented to the arbitrators as though the driver was unidentified. Having sworn in their complaints filed with the Allegheny County Court of Common Pleas that the driver was one Don Mignogna, who was employed by DeBolt Transfer, appellees nevertheless represented to the arbitrators, through their witnesses, that the identity of the driver was not known to them.

We recognize that in one sense appellees were in a difficult position. The hearings before the arbitrators were in April and June, 1977. By then appellees had lost at the first

trial of their actions against DeBolt Transfer–the jury's verdicts were in February 1976–and they did not yet know whether they would be awarded a second trial–this court's decision awarding a second trial was not filed until December 1977. Given this sequence of events, appellees may have been of the opinion that it was unnecessary to disclose to the arbitrators their belief (as manifested by their complaints in the actions against DeBolt Transfer) that the driver was one Don Mignogna, employed by DeBolt Transfer; perhaps they reasoned that since their belief that Mignogna was the driver had not been accepted by the jury, it would not be accepted by the arbitrators. However this may be, disclosure should have been made to the arbitrators, for in that way the danger of an unjust and inequitable award could be precluded.

The order of the lower court is reversed and the arbitration awards are set aside.

WATKINS, J., dissents.