Martin E. HOZLOCK, Appellee,

v.

DONEGAL COMPANIES/DONEGAL MUTUAL INSURANCE COMPANY, Appellant (Two Cases).

Superior Court of Pennsylvania.

Argued Oct. 20, 1999.

Filed Jan. 31, 2000.

Jay M. Levin, Philadelphia, for appellant.

Bruce J. Phillips, Wilkes-Barre, for appellee.

Before: HUDOCK, EAKIN and MONTEMURO *, JJ.

MONTEMURO, J.:

¶ 1 Appellant, Donegal Mutual Insurance Company, appeals from a denial of its petition to vacate an appraisal award and disqualify Appellee's appraiser. We affirm.

¶ 2 While covered under an insurance policy issued by Appellant, Appellee's property was damaged by a fire.[1] The policy contained the following provision:

> **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The

---

* Retired Justice assigned to Superior Court.

1. We note initially that we were not provided with a verbatim transcript of the lower court proceedings. The recitation of facts therefore only conveys information supported by those documents contained in the certified record on appeal.

appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

(Appellee's Motion for Appointment of Umpire to Appraise Loss Under Provisions of Policy of Insurance, Ex. P–2). When the parties were unable to agree on the amount of the loss, Appellant demanded an appraisal. Appellant appointed Edward Gieda, Jr., and Appellee, Jay William Seeherman. Appellant felt that Seeherman had an interest in the outcome of the appraisal, and objected to his appointment, filing a petition to disqualify him, claiming specifically, "Mr. Seeherman, the appraiser selected by [Appellee], is employed by [Appellee's] public adjuster, Commonwealth Adjusters, which ... has a contingency fee agreement with [Appellee] by which Commonwealth's fee is based on a percentage of the amount paid by [Appellant]." (Petition to Disqualify Appraiser and to Partially Stay Appraisal, at ¶ 8.) Although this allegation was admitted, the trial court denied the petition.

¶ 3 When the parties' appraisers were unable to agree on the amount of the loss, an umpire was appointed pursuant to the policy provisions. Without a hearing, the umpire agreed with Appellee's appraiser. Appellant then filed another petition to disqualify Appellee's appraiser, and as well, to vacate the appraisal. This was denied, and Appellant filed the instant appeal.

■ ¶ 4 For purposes of judicial review, appraisal is analogous to common law arbitration. *Boulevard Associates v. Seltzer Partnership*, 445 Pa.Super. 10, 664 A.2d 983, 987 (1995). "The award of an arbitrator in a [common law arbitration] is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award." 42 Pa. C.S.A. § 7341.

¶ 5 Appellant argues that the trial court should have disqualified Appellee's appraiser because of his financial interest in the claim, contending that he is biased because his fee is based on a percentage of the amount eventually recovered by Appellee. This payment arrangement was averred in Appellant's petition to disqualify appraiser and partially stay the appraisal, and was subsequently admitted in Appellee's answer. We will assume it to be an accurate description of the payment agreement between Appellee and Seeherman. *See* Petition to Disqualify Appraiser and to Partially Stay Appraisal, at ¶ 8; Answer, at ¶ 8. Appellant gives no other reason why the appraiser should have been disqualified. The question we are left to decide, therefore, is whether the mere existence of a contingency fee agreement between a party and his appointed appraiser renders the appraiser *per se* unfit when the applicable appraisal clause requires only that party-appointed appraisers be "competent."

¶ 6 Appellant relies on *Donegal Ins. Co. v. Longo*, 415 Pa.Super. 628, 610 A.2d 466 (1992) in support of its argument. In that case we quoted the maxim, "A hearing which comports with procedural due process must be full and fair and must be held before impartial and disinterested arbitrators." *Id.* at 468. However, *Longo* is not helpful to Appellant's position. In *Longo*, the insured's arbitrator was a lawyer who was also representing the insured in an unrelated matter. We held that the existence of an attorney/client relationship between an insured and his appointed arbitrator rendered that arbitrator unfit to serve on the panel. Our reasoning was as follows:

> [The insured's] ongoing and undisclosed attorney-client relationship with [his appointed arbitrator] rendered him unfit to serve on the panel. This was true not merely because he was presumably partisan in favor of [the insured]; but, more

importantly, because he was an employee of [the insured] who owed them a fiduciary duty of loyalty. [The insured's arbitrator's] representation of [the insured], even though in a matter unrelated to the dispute in arbitration, gave rise to a confidential relationship. The existence of such a relationship between a litigant and an arbitrator creates too great a likelihood that the arbitrator will be incapable of rendering a fair judgment.

*Id.* at 468–69.

¶ 7   In the present case there is no confidential relationship between the insured and his appointed appraiser. Appellant's allegations of partiality are based simply on the manner in which the appraiser's fee is to be determined. In *Longo*, the Court disqualified the arbitrator primarily because he owed his appointor "a fiduciary duty of loyalty." The reason for the disqualification was not simply because it could be presumed that the arbitrator was partial. Mere partiality does not necessarily render an arbitrator incapable of fair judgment. When an arbitrator owes his appointor a fiduciary duty of loyalty, on the other hand, there is an inherent conflict between his duty to act in his appointor's best interests and his duty to render a fair judgment. The *Longo* Court recognized the difference between mere partiality on one hand, and the existence of an attorney-client relationship on the other. It cited to Justice Roberts' dissent in *Bole v. Nationwide Ins. Co.* 475 Pa. 187, 195, 379 A.2d 1346, 1350 (1977), stating that the "dissent opines that while evident partiality should not require disqualification, a present attorney-client relationship between an arbitrator and a party extends beyond mere partiality and would require disqualification." *Longo*, 610 A.2d at 469 (citing *Bole*, 475 Pa. at 195, 379 A.2d at 1350). We hold that *Longo* only applies to situations where an appraiser owes his appointor a duty of loyalty as a result of a separate fiduciary relationship. Therefore Appellant's reliance is misplaced. The question here is whether, when an appraisal clause provides that "each party will choose a competent appraiser," a party-appointed appraiser may be disqualified as unfit simply because his fee is based upon a percentage of the final award.

¶ 8   We note that if Appellant so desired, it could have explicitly contracted for completely neutral appraisers. It did not. In fact, 40 P.S. § 636, which mandates certain provisions in fire insurance policies, requires that such policies include a clause providing for third party appraisal when the parties disagree on the value of a loss. The statute sets out a stock paragraph providing for such appraisal, which insurance companies are required to use in their policies. This stock paragraph contains the specific language that parties' appointed appraisers be "competent and disinterested." 40 P.S..§ 636(2). The appraisal clause in Appellant's policy merely requires the appraisers to be competent. Appellant was required by statute to use the code's stock language. It chose not to do so.

¶ 9   As there is no Pennsylvania case law on this exact issue, it is helpful to discuss the cases from other jurisdictions that are closely on point. The Supreme Court of Iowa has ruled that a contingency fee arrangement between an insured and his appointed appraiser renders the appraiser *per se* unfit. *Central Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 466 N.W.2d 257 (Iowa 1991). This ruling was made, however, in the context of an appraisal clause that required party-appointed appraisers to be "competent and disinterested." Although that court hinted that the holding would have been the same regardless of the inclusion of the word "disinterested," we hold that the two words have different meanings, and that an appraiser may be "competent" (i.e. capable of rendering a fair judgment) and at the same time be somewhat partial. A holding that the two words mean the same would ignore the reality of the tri-party appraisal process that, in a great majority of cases, some amount of partiality exists between an insured and his appraiser.

¶ 10  A Florida court recently held that the existence of a contingency fee agreement does not render the appraiser *per se* unfit. *Rios v. Tri–State Ins. Co.*, 714 So.2d 547, 549 (Fla.Dist.Ct.App.1998). The appraisal clause in that case called for "competent, independent" party-appointed appraisers. The court held that even the use of the word "independent" in the policy did not prohibit a party from paying his appraiser with a contingency fee.

¶ 11  In a 1991 case, the Supreme Court of Rhode Island purported to prohibit the use of contingency arrangements. *Aetna Cas. & Sur. Co. v. Grabbert*, 590 A.2d 88 (R.I.1991). However, in that case, the court actually went on to affirm the appraisal award in question on the basis that the challenging party failed to "demonstrate the required causal nexus between the party-appointed arbitrator's improper conduct and the award ultimately decided upon." *Id.* at 96. The ruling, then, was essentially that although such arrangements are undesirable, they may not, in and of themselves, form the basis for vacating an award.

¶ 12  We agree with *Grabbert*'s result and find instructive some of its reasoning. In reality, there will very often be some amount of partisanship involved in tri-party arbitrations. On that subject the Court stated,

> [W]e note that the parties who select party-appointed arbitrators also expect them to serve as nonneutrals. The reason the parties contract for the choice of their own arbitrator is to ensure that each party will have his or her "side" represented on the arbitration panel by a sympathetic member. The parties expect their party-appointed arbitrators to provide expert guidance and knowledge to the neutral arbitrator, who may not be in a position to appreciate the finer points of the dispute and its history. Moreover, the parties would not consider the appointment of an arbitrator a valued right to be bargained for and litigated over if they contemplated no more than the appointment of a neutral arbitrator.

*Grabbert*, 590 A.2d at 93 (citations omitted). The *Grabbert* Court went on to quote from the Code of Ethics for Arbitrators in Commercial Disputes, Cannon VII:

> In all arbitrations in which there are two or more party-appointed arbitrators, it is important for everyone concerned to know from the start whether the party-appointed arbitrators are expected to be neutrals or non-neutrals. In such arbitrations, the two party-appointed arbitrators should be considered non-neutrals unless both parties inform the arbitrators that all three arbitrators are to be neutral, or, unless the contract, the applicable arbitration rules, or any governing law requires that all three arbitrators are to be neutral.

*Id.* (quoting Code of Ethics for Arbitrators in Commercial disputes, Cannon VII).

¶ 13  Since, in most cases, an appraiser will have at least some bias towards his appointing party, an appraiser who is paid with a contingency fee will not necessarily be any more biased towards his appointor than one paid with a flat fee. Caselaw should reflect that reality. Therefore, a holding that the mere existence of a contingency agreement warrants disqualification, in the absence of specific contractual language requiring impartiality, would be inappropriate. We find that the mere existence of a contingency fee agreement does not, in and of itself, render an otherwise "competent" appraiser unfit. As the *Grabbert* Court held, a challenger must show that there is a causal nexus between the existence of such an agreement and the award ultimately decided upon. In other words, he must show that what partisanship did exist actually caused an unfair result.

¶ 14  We hold that in the absence of contractual language specifically requiring impartiality, the existence of such an arrangement between an insured and his appointed appraiser does not, in and of itself, render the appraiser unfit. Simply proving that an appraiser is partial is not the same as proving that he is

incompetent. Appellant would have needed to prove that whatever partiality existed actually clouded the appraiser's good judgment and caused an unjust result. Appellant did not do this. We express no opinion as to whether the inclusion of the word "disinterested" would have made any difference in this case. Our holding is only that use of the word "competent" in this context does not necessarily imply that the party-appointed appraisers must be neutral.

¶ 15 Appellant's next argument is that the trial court erred in not vacating the appraisal award because the umpire sided with Appellee's appraiser without first holding a hearing. It contends that "the case law is very clear that denial of a hearing is one basis for vacating an appraisal award." (Appellant's Brief at 12.) In support of its argument, it cites *Boulevard Assoc. v. Seltzer Partnership*, 445 Pa.Super. 10, 664 A.2d 983 (1995); *Paugh v. Nationwide Ins. Co.*, 278 Pa.Super. 108, 420 A.2d 452 (1980); and *Zoni v. Importers and Exporters Ins. Co. of N.Y.*, 338 Pa. 165, 12 A.2d 575 (1940).

¶ 16 As the trial court noted, *Boulevard* can be distinguished as follows: in that case, the contract provision governing appraisal stated, "[t]he three appraisers thus selected shall proceed promptly with an appraisement, giving the parties an opportunity to be heard. The fair market. value, as determined by a majority of such appraisers, shall be binding upon all concerned." *Boulevard*, 664 A.2d at 985. In that case the question of whether a hearing was necessary was not an issue. A hearing did occur, but the Court did not decide whether that hearing would have been necessary in the absence of contractual language requiring it. Therefore, that case has no bearing on our decision today. Here, Appellant's policy contained no language requiring a hearing before the appraisal panel reached a final decision.

¶ 17 *Paugh* is also distinguishable. In that case, the appellant's contention was that the arbitration panel, although it did hold a hearing, only considered one side's evidence. *Paugh*, 420 A.2d at 457. There is no evidence in the certified record, nor, in fact, does Appellant allege, that the appraisal panel considered *only* Appellee's evidence. In order to have the appraisal award set aside under *Paugh*, Appellant would have to prove that the panel considered only Appellee's side of the case.

¶ 18 In *Zoni*, "[t]he defendant's arbitrator secretly and without notice to or knowledge of the plaintiff or her representative and for the purpose of unlawfully and fraudulently reaching a figure for the loss lower than the actual amount, met and counselled [sic] with the umpire and determined upon a figure...." *Zoni*, 12 A.2d at 577. In that case, the umpire met in secret with one side's representative. The Court particularly stressed the fact that it appeared as if the umpire and one appraiser connived to fix a fraudulent award. Such circumstances were not alleged in our case. Accordingly, we find *Zoni* inapplicable.

¶ 19 Appellant would have us infer unfairness in the appraisal process from the umpire's failure to discuss each party's proposed appraisal with that party. Each appraiser submitted his proposal to the umpire; there is no evidence that the umpire did not properly consider each one. Without any evidence of particular unfairness in the process, we will not assume that the umpire did not properly consider each proposal.

¶ 20 Judgment affirmed.