WHITE v STATE FARM FIRE AND CASUALTY COMPANY

Docket No. 298083. Submitted July 6, 2011, at Detroit. Decided July 28, 2011, at 9:10 a.m.

Steven M. and Gail A. White hired a public adjusting firm, Associated Adjusters, Inc., to assist them in presenting a claim for damage caused by a fire at their residence to their insurer, State Farm Fire and Casualty Company. Jeffery Moss, a licensed public adjuster, was assigned by Associated Adjusters to assist the Whites, who signed a contract assigning to Associated Adjusters 10 percent of the total payment on the Whites' claim. When the parties were unable to reach a settlement, Moss notified State Farm in writing that, pursuant to MCL 500.2833(1)(m), the Whites demanded that the amount of the loss be set by an appraisal. Moss stated that he would represent the Whites as their appraiser and that he would be paid by the Whites on a time-and-expenses basis. State Farm responded that it would not accept Moss as an appraiser because he was not "disinterested" as required under the policy or "independent" as required under MCL 500.2833(1)(m) because of the contingency-fee contract between the Whites and Associated Adjusters. The Whites brought an action against State Farm in the Oakland Circuit Court, seeking a declaratory judgment regarding Moss's ability to serve as the Whites' appraiser. The court, Colleen A. O'Brien, J., granted in part the Whites' motion for summary disposition, ruling that Moss is "competent" and "independent" under MCL 500.2833(1)(m) and thus qualified to serve as an appraiser despite having a contingency-fee contract with the Whites for the adjusting. The court also held that the statute was constitutional and does not violate State Farm's due-process rights. State Farm appealed.

The Court of Appeals held:

1. MCL 500.2833(1)(m) requires a fire-insurance policy in Michigan to provide that, if the amount of the loss cannot be agreed upon and a party makes a written demand for an appraisal, each party shall select a "competent" and "independent" appraiser and the two appraisers shall then select a "competent" and "impartial" umpire. If the appraisers fail to agree within a reasonable time, they must submit their differences to the umpire.

A written agreement signed by any two of the three individuals thereafter sets the amount of the loss.

2. A contingency-fee agreement does not prohibit an appraiser from being "independent" under MCL 500.2833(1)(m). However, the opposing party must be made aware that a contingency-fee agreement exists. A dictionary defines "independent" as not dependent and not subject to control, restriction, modification, or limitation from a given outside source. Moss is not subject to control, restriction, modification, or limitation by anyone. He is not an employee of the Whites or under any legal duty to them with the exception of the public-adjusting contract. He is capable of exercising his own judgment regarding the value of the loss. The trial court's decision that Moss is qualified to serve as the Whites' competent and independent appraiser is affirmed.

3. Appraisers in Michigan are not considered to be quasi-judges and are not held to the same standard of fairness under MCL 500.2833(1)(m) as are umpires, who must be "impartial." An "independent" appraiser may be biased toward the party who hires and pays the appraiser as long as he or she retains the ability to base his or her recommendation on his or her own judgment. This situation does not deprive the other party of any constitutional right. Appraisers are not disqualified from their appointments simply because they have served as adjusters for the parties seeking their appointment.

Affirmed.

SHAPIRO, J., concurring, wrote separately to disagree with State Farm's argument that party-appointed appraisers should be required to possess the same level of neutrality as umpires. State Farm's argument is inconsistent with the Legislature's decision to distinguish in MCL 500.2833(1)(m) between the role of the party-selected appraisers, who need not be impartial but must be independent and not under the control of the parties, and the umpire, upon whom the decision ultimately rests, who must be impartial. The role that an appraiser plays, the fact that an appraiser is paid by one side to the dispute, and the fact that an appraiser exclusively, or nearly exclusively, works for either insurers or insureds, is the source of any lack of impartiality, not whether the appraiser is compensated at an hourly rate or by a contingent fee.

INSURANCE — FIRE INSURANCE POLICIES — DISPUTES REGARDING AMOUNT OF LOSS — APPRAISERS — UMPIRES — CONTINGENCY-FEE AGREEMENTS — WORDS AND PHRASES — INDEPENDENT APPRAISERS.

A fire insurance policy in Michigan must provide that, in the event that the insured and the insurer fail to agree on the actual cash

value or amount of a loss, either party may demand in writing that the amount be set by appraisal; the policy must provide that each party must select a competent, independent appraiser and that the two appraisers must then select a competent, impartial umpire, or lacking agreement, the relevant circuit court may appoint an umpire; the policy must provide that if the appraisers fail to agree on the amount of the loss within a reasonable time, they must submit their differences to the umpire and that an agreement signed by any two of the three shall set the amount of the loss; an appraiser, to be independent, must not be subject to control, restriction, modification, or limitation by anyone and must retain the ability to base his or her recommendation on his or her own judgment; a contingency-fee agreement does not prevent an appraiser from being independent (MCL 500.2833[1][m]).

*Fabian, Sklar & King, P.C.* (by *Michael H. Fabian*), and *Donald M. Fulkerson*, for plaintiffs.

*Patrick, Johnson & Mott, P.C.* (by *Paul H. Johnson, Jr.*, and *Cary R. Berlin*), for defendant.

Before: BORRELLO, P.J., and METER and SHAPIRO, JJ.

METER, J. In this dispute involving a fire-insurance policy, defendant, plaintiffs' insurance company, appeals as of right a partial grant of summary disposition to plaintiffs.[1] Defendant argues that the trial court erred by ruling that plaintiffs' appraiser, Jeffery Moss, is "independent" under MCL 500.2833(1)(m) and that he may proceed with the appraisal process. In the alternative, defendant submits that MCL 500.2833(1)(m) is unconstitutional as a violation of defendant's due-process rights if it permits appraisers with pertinent contingency-fee contracts in effect to serve as appraisers in coverage disputes. We affirm.

In June 2008, plaintiffs' residence in Farmington Hills was severely damaged by a fire. Plaintiffs hired

---

[1] The court ruled in defendant's favor concerning other matters not pertinent to this appeal.

the public adjusting firm Associated Adjusters, Inc. (Associated), to assist them in presenting their claim to defendant. Jeffery Moss, a licensed public adjuster, was assigned to assist plaintiffs. Moss and plaintiffs signed a contract assigning to Associated 10 percent of the total payment on plaintiffs' claim.

A dispute developed during negotiations between Associated and defendant, and when the differences could not be settled, Moss sent a letter to defendant demanding appraisal pursuant to MCL 500.2833(1)(m). He stated that he would represent plaintiffs as their appraiser in the dispute. For the appraisal, he is to be paid on a time-and-expense basis.[2] Defendant responded that it would not accept Moss as plaintiffs' appraiser because he is not "disinterested" under defendant's policy or "independent" under MCL 500.2833(1)(m). Plaintiffs then filed this action, seeking a declaratory judgment that Moss is "independent" under the statute and qualified to serve as an appraiser despite his contingency-fee adjusting agreement that remains in effect.

The parties filed cross-motions for summary disposition under MCR 2.116(C)(10). The trial court ruled that Moss is "competent" and "independent" under MCL 500.2833(1)(m) and thus qualified to serve as an appraiser despite having a contingency-fee contract with plaintiffs for the adjusting. The trial court also ruled that the statute is constitutional and does not violate defendant's due-process rights.

---

[2] Moss is to receive an hourly rate of $250, with total compensation not exceeding $5,000. Evidence indicated that his total payment, under both the adjusting contract and the appraisal agreement, would not exceed 10 percent of the final amount obtained from defendant. Presumably, the time-and-expense payment for the appraisal would be adjusted downward, if need be, to ensure that the 10 percent limit would not be exceeded.

This Court reviews de novo both declaratory rulings and summary-disposition rulings. *Toll Northville Ltd v Northville Twp*, 480 Mich 6, 10; 743 NW2d 902 (2008); *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). In evaluating a motion for summary disposition under MCR 2.116(C)(10), a court considers all pleadings, affidavits, depositions, admissions, and other documentary evidence submitted by the parties. MCR 2.116(G)(5). Evidence is considered in the light most favorable to the nonmoving party, and the moving party is entitled to judgment as a matter of law if there is no genuine issue of material fact. *Maiden*, 461 Mich at 120.

Defendant concedes in its appellate brief that this case involves interpreting the statutory term "independent" and does not analyze whether it may add the term "disinterested" to its policy as a separate, additional condition that appraisers must satisfy. Consequently, we resolve this appeal solely on the basis of the language of MCL 500.2833(1)(m). This statute indicates that a fire-insurance policy in Michigan must provide

[t]hat if the insured and insurer fail to agree on the actual cash value or amount of the loss, either party may make a written demand that the amount of the loss or the actual cash value be set by appraisal. If either makes a written demand for appraisal, each party shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days after receipt of the written demand. The 2 appraisers shall then select a competent, impartial umpire. If the 2 appraisers are unable to agree upon an umpire within 15 days, the insured or insurer may ask a judge of the circuit court for the county in which the loss occurred or in which the property is located to select an umpire. The appraisers shall then set the amount of the loss and actual cash value as to each item. If the appraisers submit a written report of an agreement to the insurer, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall

submit their differences to the umpire. Written agreement
signed by any 2 of these 3 shall set the amount of the loss.
Each appraiser shall be paid by the party selecting that
appraiser. Other expenses of the appraisal and the compen-
sation of the umpire shall be paid equally by the insured
and the insurer. [*Id.*]

Defendant argues that because Moss signed an agree-
ment with plaintiffs assigning to Associated 10 percent
of the overall amount paid by defendants, and this
agreement was still in effect when plaintiffs nominated
Moss as their appraiser and in fact remains in effect,
Moss has a pecuniary interest in the appraisal's out-
come and is not "independent" under the statute.

This Court's decision in *Auto-Owners Ins Co v Allied
Adjusters & Appraisers, Inc*, 238 Mich App 394; 605
NW2d 685 (1999), interpreted the requirement in MCL
500.2833(1)(m) that an appraiser be "independent" for
the only time in a published opinion since the repeal of
MCL 500.2832 by 1990 PA 305, effective January 1,
1992. Before the repeal of MCL 500.2832 and the
enactment of the statute at issue here, the analogous
former statute had read, in pertinent part, that "each
[party] shall select a competent and *disinterested* ap-
praiser," and should the two appraisers not come to an
agreement, a "competent and *disinterested* umpire"
would resolve the dispute. (Emphasis added.) See
former MCL 500.2832 (repealed by 1990 PA 305, effec-
tive January 1, 1992, replaced by MCL 500.2833 added
by 1990 PA 305, effective December 14, 1990). As the
decision in *Auto-Owners* explained, MCL 500.2833 "in-
dicates that the standards for appraisers and umpires
are no longer the same." *Auto-Owners*, 238 Mich App at
400. The current version of the statute requires that
appraisers be "competent [and] *independent*," while
umpires must be "competent [and] *impartial*." MCL
500.2833(1)(m) (emphasis added).

Because the statute does not define the words "independent" or "impartial," it is proper to consider the dictionary definitions of these terms. See *Auto-Owners*, 238 Mich App at 398. The *Auto-Owners* Court indicated that "[t]he definition of 'independent' is '[n]ot dependent; not subject to control, restriction, modification, or limitation from a given outside source.'" *Id.* at 400, quoting Black's Law Dictionary (6th ed). On the contrary, "[t]he definition of 'impartial' is '[f]avoring neither; disinterested; treating all alike; unbiased; equitable, fair, and just.'" *Auto-Owners*, 238 Mich App at 400-401, quoting Black's Law Dictionary (6th ed). On the basis of this difference, the Court in *Auto-Owners* found that an "independent appraiser may be biased toward the party who hires and pays him, as long as he retains the ability to base his recommendation on his own judgment." *Auto-Owners*, 238 Mich App at 401. The Court held that appraisers "are not disqualified from their appointments on the basis of having previously served as adjusters." *Id.* The *Auto-Owners* Court did not decide any issue pertaining to a contingency-fee agreement such as the one at issue in this case.

This Court in *Linford Lounge, Inc v Michigan Basic Prop Ins Ass'n*, 77 Mich App 710, 713; 259 NW2d 201 (1977), interpreting the since-repealed statute that included the "disinterested" requirement, held that an appraiser may still be "disinterested" if he or she had previously served as an adjuster on a claim. That case, like the one at bar, involved a contingency-fee agreement paid to a public adjuster. Unlike in this case, the contract with the public adjuster in *Linford Lounge* was canceled before or at the time the adjuster was appointed as the insured's appraiser in the dispute. *Id.* at 712. However, contrary to defendant's contention, *Linford Lounge* does not *require* that the insured cancel its previously agreed-upon contract in order to appoint its

prior adjuster as its appraiser in the event of a dispute. The *Linford Lounge* Court held only that an appraiser is not disqualified under the "disinterested" standard simply because he or she had represented the insured previously as an adjuster. It did not decide whether the appraiser would have been "disinterested" if the contract had not been canceled. Neither *Auto-Owners* nor *Linford Lounge* holds, as defendant implies, that an appraiser currently working under a contingency-fee agreement as an adjuster cannot be "independent."

Because no published opinion in Michigan is directly on point with regard to the present appeal, we examine decisions from other jurisdictions. In *Rios v Tri-State Ins Co*, 714 So 2d 547 (Fla App, 1998), the court interpreted a contractual provision similar to MCL 500.2833(1)(m). The appraisal provision in the contract required each party to "select 'a competent, *independent* appraiser' (emphasis added), and the two party-designated appraisers will then select a 'competent, impartial umpire.' " *Id.* at 548. Given that the contract in *Rios*, like MCL 500.2833(1)(m), contained no definition of "independent," the court quoted the same definition discussed above[3] and "decline[d] to interpret the term 'independent' . . . to limit the type of compensation which can be paid." *Rios*, 714 So 2d at 549-550. While the court cautioned that the other party must be made aware of a contingency-fee agreement, it held that an appraiser may be independent while working under a contingency-fee agreement. *Id.* Another Florida panel held that a policy that required an appraiser to be "disinterested" did not prevent him from receiving a

---

[3] " '[N]ot subject to control, restriction, modification, or limitation from a given outside source[.]' " *Rios*, 714 So 2d at 549, quoting Black's Law Dictionary (6th ed).

contingency fee for the appraisal. See *Galvis v Allstate Ins Co*, 721 So 2d 421 (Fla App, 1998).

The court in *Hozlock v Donegal Cos*, 2000 Pa Super 25; 745 A2d 1261 (2000), stated that "[m]ere partiality does not necessarily render an arbitrator incapable of fair judgment." *Id.* at ¶ 7. While the policy at issue in *Hozlock* required only that the appraiser be "competent," the court went on to state that

> an appraiser who is paid with a contingency fee will not necessarily be any more biased towards his appointor than one paid with a flat fee. Caselaw should reflect that reality. Therefore, a holding that the mere existence of a contingency agreement warrants disqualification, in the absence of specific contractual language requiring impartiality, would be inappropriate. [*Id.* at ¶ 13.]

While *Hozlock* is not directly on point because it did not analyze the term "independent," it is instructive.[4] The court specifically declined to state whether the addition of "disinterested" into the policy would have changed the result, *id.* at ¶ 14, but, clearly, adding the word "independent" as defined above would not.

Other state cases have criticized contingency-fee agreements in certain contexts. The Iowa Supreme Court invalidated an appraisal award in *Central Life Ins Co v Aetna Cas & Sur Co*, 466 NW2d 257, 261-262 (Iowa, 1991), on the grounds that an appraisal is a quasi-judicial function and thus an appraiser must be disinterested. That court expressed the opinion that a

---

[4] As discussed above, the *Hozlock* court opined that "a holding that the mere existence of a contingency agreement warrants disqualification, in the absence of *specific contractual language requiring impartiality*, would be inappropriate." *Id.* at ¶ 13 (emphasis added). We interpret that language to endorse the position that a contingency-fee agreement does not disqualify an appraiser under the "independent" standard because the word "independent," as we have defined it, does not require impartiality.

contingency-fee agreement gives the appraiser "a direct financial interest in the dispute" and thus renders him "interested." *Id.* at 261. The Rhode Island Supreme Court in *Aetna Cas & Sur Co v Grabbert*, 590 A2d 88, 94 (RI, 1991), an arbitration case, stated that "Grabbert's party-appointed arbitrator has violated Canon I of the Code of Ethics because his contingent fee gave him a direct financial interest in the award that would tend to destroy public confidence in the integrity of the arbitration process." The court nevertheless refused to vacate the arbitration award because of other considerations. *Id.* at 96-97. The court in *Rios* explicitly declined to follow both of these cases. *Rios*, 714 So 2d at 549.

We follow *Rios* and hold that a contingency-fee agreement does not prevent an appraiser from being "independent" under MCL 500.2833(1)(m).[5] Moss is clearly " 'not subject to control, restriction, modification, or limitation' " by anyone. See *Auto-Owners*, 238 Mich App at 400, quoting Black's Law Dictionary (6th ed). He is not an employee of plaintiffs or under any other legal duty to them with the exception of the public-adjusting contract. As such, he is capable of exercising his own judgment regarding the value of the loss in this proceeding and should not be disqualified to serve as plaintiffs' appraiser in this dispute under the "competent [and] independent" standard set forth in MCL 500.2833(1)(m). Moss testified that he makes his own determinations regarding the loss and does not listen to his clients regarding a recommended settlement amount, and defendant's appraiser agreed. Moss is "independent," and we affirm the trial court's decision.[6]

---

[5] As in *Rios*, we find that the opposing party must be made aware that a contingency-fee agreement exists.

[6] We note that reading the word "independent" to require a time-and-expense compensation agreement would make it more difficult for

Defendant next argues that MCL 500.2833(1)(m), if it allows Moss to serve as an appraiser under the present facts, violates defendant's due-process rights. We disagree. We review matters of constitutional interpretation de novo. *Toll Northville*, 480 Mich at 10-11.

Contrary to defendant's implication, appraisers in Michigan are not considered to be quasi-judges. They are not held to the same standard of fairness as an "impartial" umpire. See MCL 500.2833(1)(m) (requiring the parties to select a "competent [and] impartial" umpire in appraisal disputes). Public adjusters and appraisers are hired to assist in presenting a claim to an insurance company and to assist in any dispute that might arise, respectively. They are more similar to attorneys than to judges and umpires. Attorneys and appraisers are hired by one party to assist in presenting that party's position, while judges and umpires must take the proposals of both parties and decide which one is to prevail.[7]

---

policyholders to hire public adjusters. The situation is analogous to the hiring of attorneys on a contingency-fee basis; that system exists partly because many people would be unable to hire lawyers if time-and-expense were the only allowable compensation method.

[7] This Court adopted language from a California decision for the proposition that " '[c]ourts have repeatedly upheld agreements for arbitration conducted by party-chosen, nonneutral arbitrators, particularly when a neutral arbitrator is also involved. These cases implicitly recognize it is not necessarily unfair or unconscionable to create an effectively neutral tribunal by building in presumably offsetting biases.' " *Whitaker v Citizens Ins Co of America*, 190 Mich App 436, 440; 476 NW2d 161 (1991), quoting *Tate v Saratoga S & L Ass'n*, 216 Cal App 3d 843, 852; 265 Cal Rptr 440 (1989), disapproved of on other grounds by *Advanced Micro Devices, Inc v Intel Corp*, 9 Cal 4th 362; 36 Cal Rptr 2d 581; 885 P2d 994 (1994). While *Whitaker* and *Tate* refer to arbitration proceedings and not appraisals, they are instructive because arbitration and appraisal have pertinent similarities. But see *Mahnke v Superior Court of Los Angeles Co*, 180 Cal App 4th 565, 574-575; 103 Cal Rptr 3d 197 (2009) (noting that under California law appraisers are held to a "disinterested"

*Auto-Owners*, 238 Mich App at 401, allows for the likelihood of a party-appointed appraiser's being biased towards the party that retained the appraiser. This does not deprive defendant of any constitutional right. The cases cited by defendant in favor of its position assume that an appraiser is directly analogous to a judge. They are not binding in this situation because Moss is not required to be quasi-judicial or impartial. See *Tumey v Ohio*, 273 US 510; 47 S Ct 437; 71 L Ed 749 (1927) (it was a violation of due process where the mayor of the city sat as a judge and received a salary increase for convicting a defendant), and *Caperton v A T Massey Coal Co, Inc*, 556 US 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009) (a West Virginia justice had refused to recuse himself in a situation in which he had a conflict of interest). Moss is not a quasi-judge and there has been no denial of defendant's due-process rights. The trial court did not err in its ruling.

Affirmed.

BORRELLO, P.J., concurred with METER, J.

SHAPIRO, J. (*concurring*). I concur with Judge METER's opinion in all respects. I write separately to emphasize the practical dislocations that would arise from adoption of defendant's argument. Defendant essentially asks that we require the party-appointed appraisers to possess the same level of neutrality as the umpire. Indeed, virtually all the cases cited by defendant address the requirements for judges and magistrates, which is, of course, an absolute standard of impartiality. I agree with the majority that defendant's position is inconsistent with the Legislature's decision to use

standard much like the repealed MCL 500.2832, but arbitrators are held to a less-stringent standard not requiring disinterest).

statutory language that clearly distinguishes between the role of the party-selected appraisers and the umpire. The umpire, upon whom the decision ultimately rests, must be "impartial" while the appraisers need not be. Instead, they must be "independent," i.e. not under the actual control of the parties.

Appraisal is a practical mechanism to resolve disputes without the necessity for lawsuits and the appraiser acts as an expert for the party that hires the appraiser. While an appraiser brings specialized knowledge to the process, all parties also expect that each appraiser will articulate and generally support his or her client's position concerning the claim. In an appraisal, the two party-selected appraisers, through argument and compromise, attempt to reach a resolution of the claim that they both believe is reasonable. If that cannot be accomplished, then the umpire either induces them to bridge their differences or makes the decision himself with one of the two party-selected appraisers providing the second vote. Despite defendant's assertion of a due process claim, at no point does defendant assert that this method yields unfair results or that it is impracticable.

Defendant suggests that payment of an appraiser by contingent fee is corrupting, but that payment by hourly fee is not. This is a distinction without a difference. The appraiser appointed by defendant in this case makes his living acting on behalf of insurance companies and it is either naive or disingenuous to suggest that he will continue to be hired by them if they do not feel that the results he obtains are in their interest. Defendant's appraiser testified that over the past three years alone, defendant has appointed him as its appraiser on approximately 40 claims and has paid him $114,512.03 in appraiser fees. In the 14 recent claims

where this appraiser and a public adjustor, presumably working under a 10 percent contingency fee agreement, served as party appraisers, his hourly fees exceeded the policyholders' appraisers' fees by 42 percent. To maintain that he does not have a pecuniary interest in seeking a favorable outcome for defendant and the other insurance companies that retain him is absurd. This is not an attack on this gentleman's probity, because he is, in fact, paid to act as an advocate with specialized knowledge, as is plaintiff's appraiser. The role that an appraiser plays, the fact that he or she is paid by one side to the dispute, and the fact that he or she exclusively (or nearly exclusively) works for either insurers or insureds, is the source of the lack of impartiality, not whether the appraiser is compensated at an hourly rate or by a contingent fee. An appraiser's livelihood depends on maintaining a reputation among insureds or insurers that their respective positions will be well-articulated and supported and that the appraiser will obtain an acceptable, if not pleasing, outcome for the side that retained the appraiser. If we were to adopt defendant's extrastatutory requirements, virtually all party-appointed appraisers would have to be disqualified and the entire appraisal mechanism, which has fairly served all sides for decades, would come to a screeching halt. The result would be more unnecessary litigation.

Lastly, the majority opinion does not address plaintiffs' argument that defendant's policy, by requiring "disinterested" rather than "independent" appraisers, is inconsistent with state law, as it has existed since 1990, and constitutes fraud. Given our conclusion in this case, I agree that it was not necessary to do so and I make no judgment regarding defendant's intent in its continued use of the outdated term. However, it must be noted that defendant's response to this argument is

wholly devoid of merit. Defendant suggests that if its policy is out of compliance with the statute, indeed, even if it is purposefully so, it is of no consequence because its policy also states:

### 10. Conformity to State Law.

When a policy provision is in conflict with the applicable law of the state in which this policy is issued, the law of the State will apply.

This statement, which is itself required to be included by state law, is a sword provided to insureds should they discover that the policy issued to them does not comply with state law. Contrary to defendant's suggestion, it is not intended as a shield for insurers that issue policies inconsistent with state law. Insurers have a duty to comply with state law. The provision just cited is intended to require that compliance, not to facilitate noncompliance.