J-E03001-14

2015 PA Super 6

| STATE FARM MUTUAL AUTOMOTIVE INSURANCE COMPANY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BARISHA DILL | |
| Appellant | No. 3120 EDA 2012 |

Appeal from the Judgment Entered December 19, 2012
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 1370 March Term, 2012

BEFORE: BENDER, P.J.E., BOWES, PANELLA, DONOHUE, SHOGAN, ALLEN, LAZARUS, WECHT, AND STABILE, JJ.

CONCURRING AND DISSENTING OPINION BY BOWES, J.:

**FILED JANUARY 13, 2015**

I agree with Judge Shogan, and thus disagree with the learned majority, that waiver is inappropriate on the facts herein. There is no indication that Ms. Dill, who was eleven years old at the time of the accident, or her present counsel, who did not represent her in the underlying third-party case, had actual knowledge of Attorney Kevin McNulty's role in that litigation at the time of the arbitration. Furthermore, I am reluctant to penalize Ms. Dill for failing to recall or discover Mr. McNulty's earlier participation, especially when Mr. McNulty maintained he had no memory of the case and obviously did not check for possible conflicts.

Absent waiver, I agree with Judge Donohue that this appeal requires construction of the insurance policy language detailing the selection of UIM/UM arbitrators. The State Farm insurance policy herein provides:

> Each party shall select a competent arbitrator. These two shall select a competent and impartial third arbitrator. If unable to agree on a third one within 30 days, either party may request a judge of a court of record in the county in which the arbitration is pending to select a third one. The written decision of any two arbitrators shall be binding on each party.

State Farm Policy at 20. A "competent arbitrator" is undefined, although it appears that one need not be impartial to be competent.[1] I also concur with Judge Donohue that Pa.R.C.P. 1302, governing compulsory arbitration, has no application herein. Consequently, its incorporation of the Code of Judicial Conduct disqualification rules does not inform our review. Hence, I disagree with Judge Shogan's premise that Mr. McNulty's earlier representation of the third-party tortfeasor automatically disqualifies him from serving as an arbitrator in this UIM proceeding. **See** Canon 3(C)(1)(b).[2]

---

[1]  This distinction is not an aberration. The Rules of Professional Conduct place different constraints on subsequent representation by an attorney who formerly acted as a neutral arbitrator and one who was "selected as a partisan of party in a multi-member arbitration panel." **See** Pa.R.Prof.C. 1.12(a) and (d).

[2]  The trial court concluded that after Attorney McNulty withdrew his appearance and Daniel Lewbart, Esquire, entered his appearance, "neither McNaulty (sic) nor any attorney in his office had further involvement in the third party action." Trial Court Opinion, 3/7/13, at 1. However, contrary to the trial court's representation, the docket reflects that Attorney Lewbart

*(Footnote Continued Next Page)*

- 2 -

I do believe, however, that the word "competent" as used in the policy, connotes more than knowledge, skill and expertise. In the legal context, competence involves qualification to be a party, witness, or in this case, an arbitrator.[3] There may be situations where a skilled attorney is incompetent to serve as an arbitrator due to a conflict of interest, present or prior involvement with the parties, a pecuniary benefit in the outcome, or outside knowledge of the disputed facts. His or her failure to disclose the circumstances or withdraw may constitute an irregularity within the meaning of 42 Pa.C.S. § 7341.[4] Partiality alone, however, does not render a partisan arbitrator in a multi-member panel incompetent to serve.

_(Footnote Continued)_ ———————————————

was Attorney McNulty's partner in the firm of Gerlamo McNulty Divis Lewbart.

[3] In addition to mental condition and immaturity, a person may be rendered incompetent to be a witness by virtue of another's assertion of a privilege. **See** 42 Pa.C.S. §§ 5925, 5926, 5927 (spouses incompetent to testify against each other in civil cases with certain exceptions). **See also** the Dead Man's Act, 20 Pa.C.S. § 2209 (defining circumstances when witnesses are incompetent to testify against a decedent). Pa.R.E. 605 renders a presiding judge incompetent to testify as a witness at the trial or other proceeding. Pa.R.E. 606(a) renders a juror incompetent "to testify as a witness before the other jurors at the trial."

[4] As counsel for the third-party tortfeasor in the underlying case, Attorney McNulty may have been privy to facts regarding Ms. Dill's injuries and treatment, as well as the amounts of available coverages. Generally, UIM arbitrators are not informed of amounts received in the prior third-party or UIM cases, nor the applicable UM/UIM coverages. They are asked to evaluate the injury, and after the fact, the award is molded to reflect payments already made and available coverages. Herein State Farm

_(Footnote Continued Next Page)_

Even assuming that Attorney McNulty was not competent within the meaning of the insurance policy, and that his failure to disclose his prior involvement or knowledge of the underlying facts constituted an irregularity within the meaning of 42 Pa.C.S. § 7341, in my view, the setting aside of the award is still not warranted in this case.[5]  Our scope of review is extremely narrow.  *See McKenna v. Sosso*, 745 A.2d 1, 4 (Pa.Super. 1999), citing *Chervenak, Keane & Co., Inc. v. Hotel Rittenhouse Assocs., Inc.*, 477 A.2d 482, 485 (Pa.Super. 1984) (review "limited to whether the appellant was deprived of a hearing or whether 'fraud, misconduct, corruption or other irregularity' tainted the award").

This Court recently reaffirmed in *F.J. Busse Co. v. Zipporah, L.P.*, 879 A.2d 809, 811 (Pa.Super. 2005), that the appellant "bears the burden to establish both the underlying irregularity **and** the resulting inequity by 'clear, precise and indubitable evidence.'"  (emphasis supplied).  In this context, "irregularity refers to the process employed in reaching the result of the arbitration, not to the result itself[,]" *id*., and the irregularity may appear in the conduct of either the arbitrators or the parties.  *Paugh v.*

*(Footnote Continued)* ─────────────

apprised the arbitrators of the amounts Ms. Dill previously received, as well as the limits of available UIM coverage.  However, Ms. Dill did not object. Thus, I agree with the Majority that this issue is waived.

[5] The Majority examined Attorney McNulty's failure to remove himself to determine whether it was an irregularity that would excuse Ms. Dill's waiver within the meaning of 42 Pa.C.S. § 7362(d).  Majority Opinion, at 6 n.2.

*Nationwide Ins. Co.*, 420 A.2d 452, 458 (Pa.Super. 1980); *see also Nicholson Supply Co. v. Pennsy Supply, Inc.*, 468 A.2d 808 (Pa.Super. 1983) (vacating arbitration award where plaintiff submitted evidence *ex parte*).   However, the appellant must also demonstrate by "'clear, precise, and indubitable' evidence" the "resulting inequity," *Chervenak*, *supra* at 485, *i.e.*, that the irregularity resulted in "**the rendition of an unjust, inequitable or unconscionable award**."   42 Pa.C.S. § 7341 (emphasis supplied) ("The award of an arbitrator in a nonjudicial arbitration . . . is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.").

Ms. Dill did not clearly demonstrate that Attorney McNulty's prior involvement in the third-party case tainted the process and rendered this award unjust, unconscionable, or inequitable.   In fact, she makes no argument at all relative to this issue.   My review of the record revealed that Ms. Dill underwent physical therapy for lower back and left shoulder pain attributed to strain and sprain twice per week for four months, and then once per week for two additional months.   N.T., 6/15/12, at 30-32.   She felt approximately forty percent better.   *Id*.   She saw a pain specialist and an orthopedic specialist over the next two years.   An MRI of her shoulder three years after the accident was unremarkable.   Although home exercises

provided some relief, Ms. Dill stopped the regimen because "it started to become painful." *Id*. at 49. Although Ms. Dill denied that she was able to participate in sports, she was confronted with the fact that during the spring of her sophomore year in high school, she ran the one-hundred-yard dash, the girls' four-by-one-hundred relay, and participated in the long jump at the Ches-Mont track and field championships. *Id*. at 77-79. Despite her complaints of ongoing pain, she could not explain why she had not sought a second opinion from other medical professionals.

Ms. Dill had already received $30,000 in compensation for her injuries, a fact known by all three arbitrators. I see nothing that suggests that the panel's unanimous finding that no additional compensation was due was unjust, unconscionable, or inequitable. Hence, I would affirm on that basis.